IUS 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00323-CV







Industrial Utilities Service, Inc./Texas Natural Resource

Conservation Commission, Appellants


v.



Texas Natural Resource Conservation Commission/


Industrial Utilities Service, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 93-11481, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Appellant, Industrial Utilities Service, Inc., challenges the district court's affirmance of the
Texas Natural Resource Conservation Commission's order precluding Industrial Utilities from including
certain rate case expenses in its costs of services to its customers. We will affirm the district court's
judgment.


BACKGROUND


 Industrial Utilities is a privately owned water and wastewater utility governed by the Harris
Galveston Coastal Subsidence District. To control subsidence in the coastal area, the District requires
utilities to convert eighty percent of their water supply from ground water to surface water. (1) Industrial
Utilities, which obtained all of its water from ground sources, initially planned to comply by participating
in the North Channel Water Supply Corporation but later withdrew when it found participation too costly. 
The District would not renew Industrial Utilities' permit unless it developed an alternate plan for conversion
to surface water. Industrial Utilities then proposed to build a surface-water treatment plant within ten years. 
It planned to finance construction of the plant by adding a surcharge to its rates over the ten-year period. 
The District approved Industrial Utilities' permit on the condition that it build the treatment plant in five
years. In an attempt to meet the District's conditions, Industrial Utilities proposed to finance one-half of
the new plant's cost through surcharges to its customers and the remainder through conventional financing.

 In October 1991, Industrial Utilities filed with the Commission a surcharge application in
which it outlined its plan to meet the District's requirements. See Tex. Water Code Ann. § 13.183(b)
(West Supp. 1997) (in a rate proceeding, the Commission may also approve the collection of additional
revenues, or surcharges, from the utility's customers to provide funds for capital improvements). While the
Commission was aware of Industrial Utilities' need to comply with the District's conversion requirements,
the Executive Director notified Industrial Utilities that the hearing would focus solely on the economic
suitability of imposing the surcharge on Industrial Utilities' customers. In a puzzling turn of events, Industrial
Utilities proceeded to ask the Commission to deny its own request for a surcharge. It presented evidence
that the increased rates to its customers would likely encourage them to drill their own wells or obtain their
water elsewhere, leading to Industrial Utilities' eventual insolvency. William H. Hardy, president, stated
that Industrial Utilities did not want the Commission to grant the application, while Skip Newsom, legal
counsel, suggested that Industrial Utilities would take the Commission's denial of the surcharge back to the
District as proof that it was not feasible to build the treatment plant in five years. Hearing this testimony,
the Executive Director proposed that the Commission dismiss the case with prejudice and deny Industrial
Utilities any expenses it had incurred in seeking a surcharge that it did not want. The Hearing Examiner's
proposal for decision recommended denying, rather than dismissing, the requested surcharge. The
Commission's final order denied both the requested surcharge and the recovery of expenses.

 In Finding of Fact 8, the Commission found the rate case expenses were not reasonably
or necessarily incurred:


The rate case expenses incurred by Industrial Utilities Service, Inc. were not reasonably
or necessarily incurred because Industrial Utilities Service, Inc. did not desire the
Commission to authorize the surcharge for which it applied.

 


Because of this the Commission determined, in Conclusion of Law 7, that the expenses could not be
recovered from the utility's customers:


The rate case expenses incurred by Industrial Utilities Service, Inc. are unreasonable,
unnecessary, and not in the public interest and may not be included in the cost of service
as required by Section 13.185(b)(3) of the Texas Water Code. 



Based on these holdings, the Commission's order denied the recovery of expenses:


The rate case expenses incurred by Industrial Utilities Service, Inc. in this proceeding shall
not be included in any cost of service that the utility may recover from its customers.


 Industrial Utilities filed a motion for rehearing with the Commission alleging that the
Commission lacked the authority to disallow expenses. (2) Specifically, Industrial Utilities challenged Finding
of Fact 8 and Conclusion of Law 7. The Commission denied the motion for rehearing and Industrial
Utilities sued for judicial review in district court, adding a challenge to Finding of Fact 12. See Tex. Water
Code Ann. § 13.381 (West 1988). Finding of Fact 12 states:


Industrial Utilities Service, Inc., presented no evidence to support the proposed monthly
surcharge applied for in Industrial Utilities Service, Inc.'s application.



The Commission contended in district court that Industrial Utilities failed to preserve error as to Finding of
Fact 12 in its motion for rehearing. The district court found that Industrial Utilities had preserved error on
this point and then affirmed the Commission's decision.


DISCUSSION

 In its first point of error, Industrial Utilities contends the district court erred in affirming
Finding of Fact 8, Conclusion of Law 7 and the Commission's order denying recovery of rate case
expenses because those provisions: (1) exceed the Commission's statutory authority; (2) are not supported
by substantial evidence; (3) are arbitrary, capricious, and an abuse of discretion, and (4) constitute an
unlawful advisory opinion by the agency. In its second point of error, Industrial Utilities contends Finding
of Fact 12 is not supported by substantial evidence and is arbitrary, capricious, and an abuse of discretion. 
The Commission cross appeals, contending that Industrial Utilities failed to preserve its appeal as to Finding
of Fact 12. We note that this appeal concerns only the Commission's disallowance of Industrial Utilities'
rate case expenses; it does not challenge the denial of the surcharge application.

 The legislature has charged the Commission with ensuring that every rate charged by a
utility is just and reasonable. Tex. Water Code Ann. § 13.182. A water utility's rates are based on the
utility's cost of service, which consists of allowable expenses and return on invested capital. 30 Tex.
Admin. Code § 291.31 (1996). A utility may recover expenses incurred in bringing a rate case (3) by
including them as part of its cost of service, unless the Commission finds the expenses to be "unreasonable,
unnecessary, or not in the public interest." Tex. Water Code Ann. § 13.185(h)(3); 30 Tex. Admin. Code
§ 291.31 (1996); Texas Water Comm'n v. Lakeshore Util. Co., 877 S.W.2d 814, 825 (Tex.
App.--Austin 1994, writ denied).

 Industrial Utilities contends that the Commission had no authority to disallow the recovery
of expenses the utility had not requested in its surcharge application, arguing that an agency lacks authority
to decide an issue not presented for its consideration. See City of Alvin v. Public Util. Comm'n of
Texas, 876 S.W.2d 346 (Tex. App.--Austin 1993), writ dism'd, 893 S.W.2d 450 (Tex. 1994). In City
of Alvin, this Court held that the Public Utility Commission lacked the authority to decide the prudence of
construction of the appellant's generating facility when that issue was not included in the utility's petition and
evidence concerning that facility was introduced only to bolster evidence on an issue properly before the
agency. See id. at 352. City of Alvin is distinguishable, however, because there the disputed issue was
not a component of the ultimate issue being determined by the agency. In the present case, the Commission
was determining the suitability of the requested surcharge. The Commission ordinarily addresses rate case
expenses in the same proceeding. See 30 Tex. Admin. Code §§ 291.23, 291.31. (4) Industrial Utilities listed
in its surcharge application amounts for "Accounting and legal fees" and "Cost in Preparing Rate Change
not including hearing expense." The Commission's ratemaking power includes the discretion to disallow
improper legal expenses, provided it does not do so arbitrarily. See Lakeshore Util. Co., 877 S.W.2d
at 826. Therefore, when Industrial Utilities applied for the surcharge, the Commission had the authority
to determine the reasonableness and necessity of the utilities' expenses incurred in seeking the surcharge
at the same time that it considered the propriety of granting the surcharge.

 Industrial Utilities contends the Commission may only address rate case expenses when
the utility seeks to pass them on to its customers through an increase in base rates. However, there is
nothing in the Commission's enabling legislation or its rules that limits recovery of rate case expenses to
inclusion in the utility's base rates. The Commission could have allowed the utility to recover the expenses
through a surcharge. See West Texas Util. v. Office of Public Util. Counsel, 896 S.W.2d 261, 271
(Tex. App.--Austin 1995, no writ) (approves surcharge covering rate case expenses assessed only upon
customers to whom the expenses applied); see also City of Amarillo v. Railroad Comm'n of Texas, 894
S.W.2d 491, 495 n.1 (Tex. App.--Austin 1995, writ denied) (Gas Utility Regulatory Act does not
mandate specific method of recovery of rate case expenses); Trinity Water Reserve, Inc. v. Evans, 829
S.W.2d 851, 872 (Tex. App.--Beaumont 1992, no writ) (citing Commission's order assessing rate case
expenses as surcharge). Even though Industrial Utilities did not request an increase in its base rates, the
record indicates that the Commission determined and adjusted the utility's cost of service as it would in a
full rate proceeding--its staff reviewed the utility's base rates, prepared a cost of service study, and
conducted a field audit. Therefore, the fact that Industrial Utilities did not seek an increase in its base rates
was immaterial. The Commission had the authority to determine the recoverability of the expenses in the
surcharge hearing. (5)

 In West Texas Utilities, 896 S.W.2d at 271, we held that the agency properly exercised
its authority in imposing a surcharge to cover expenses on municipalities intervening at the hearing, even
though there was no official notice and no evidence was introduced on that issue. The cities claimed that
the agency's decision was arbitrary and capricious because it disregarded provisions of the Public Utility
Regulatory Act and the Administrative Procedure Act. This Court rejected that argument and held that the
"Commission's policy decision to impose the surcharge  . . . falls within its discretion to pass through
ratemaking costs to the consumer." Id. Furthermore, we held that such a policy determination is subject
to an arbitrary and capricious standard of review:


When an agency decision involves the balancing of competing interests . . . and an
evaluation of the equities of the situation, the agency is making a fundamental policy choice. 
The agency can choose to implement such a policy through the APA's formal rulemaking
procedures or, under certain circumstances, on an ad hoc basis. "An ad hoc 'rule' is an
agency statement that interprets, implements, or prescribes agency law or policy." When
the agency promulgates an ad hoc "rule," the appropriate standard of review is not whether
the agency's policy choice is supported by substantial evidence, but whether the choice
was arbitrary and capricious.



Id. at 272 (quoting Texas Ass'n of Long Distance Tel. Co. (Texaltel) v. Public Util. Comm'n, 809
S.W.2d 875 (Tex. App.--Austin 1990, writ denied)). We concluded that the Commission's desire to
discourage duplicative efforts and prevent nonparticipants from having to pay for a municipality's
intervention in Commission proceedings provided a rational basis for its decision; thus its action was not
arbitrary and capricious. Id. at 273.

 Industrial Utilities contends the Commission's decision disallowing expenses was arbitrary,
capricious, and an abuse of discretion because the Commission considered the irrelevant factor that
Industrial Utilities did not "desire" the surcharge. See Starr County v. Starr Indus. Servs., Inc., 584
S.W.2d 352, 355 (Tex. App.--Austin 1979, writ ref'd n.r.e.). We reject this argument because the Water
Code directs the Commission to disallow expenses found to be unreasonable, unnecessary, or not in the
public interest. As in West Texas Utilities, here the Commission made a policy decision based on the
unexpected anomaly that occurred at the hearing. The record shows that the Commission engaged its staff
and resources for over a year in determining the economic and technical suitability of granting the surcharge,
only to hear the utility's evidence against granting the surcharge, including the president's own testimony
that Industrial Utilities did not want the surcharge. The Executive Director was understandably incensed
at the waste of resources and at being used as a pawn by the utility as it pitted one regulatory body against
another, seeking to avoid the District's conversion requirement. The Commission may reasonably expect
a utility applying for a surcharge to present evidence in favor of that request. The Commission was justified
in finding that expenses incurred in seeking a surcharge the utility did not want were unreasonable,
unnecessary, and not in the public interest. The Commission did not need to hear evidence on the amount
of such expenses, because under its reasoning any amount would have been unreasonable. The
Commission has not only the discretion, but the duty, to ensure that rates charged to public utility customers
do not include expenses incurred in seeking a surcharge that the utility's own evidence disfavors. We hold
that the Commission's decision was not arbitrary, capricious, or an abuse of discretion.

 Industrial Utilities contends West Texas Utilities is inapplicable because here the Executive
Director did not raise the issue until the close of all the evidence. However, in West Texas Utilities, no
evidence was presented on the requested surcharge because the hearing examiner postponed its
consideration and the Commission granted the surcharge only in a clarification order issued after the hearing
had concluded. West Texas Utilities, 896 S.W.2d at 271, 273. We rejected the cities' contention that
their due process rights were violated because they were denied a full hearing on the surcharge issue, noting
that the APA "does not mandate that parties be given an unlimited right to cross-examination and multiple
hearings." Id. at 273. Significantly, we indicated that


[The cities] could have asked to present evidence against the surcharge during the hearing
but did not. All parties had the opportunity to file exceptions to the Examiners' Report,
which included [the surcharge finding], and replies to those exceptions. Thus, the
surcharge issue was presented, discussed, and ruled on with all necessary due process.



Id. 

 Although the Executive Director requested that Industrial Utilities' rate case expenses be
disallowed in his closing argument, Industrial Utilities had the opportunity to respond. Industrial Utilities
had another opportunity to contest the Executive Director's motion to disallow its expenses after the
Hearing Examiner's proposal for decision. Industrial Utilities could have sought to reopen the record to
present additional evidence but did not. We hold that Industrial Utilities had a fair opportunity to be heard
and its due process rights were not violated.

 In West Texas Utilities, we held that it was within the agency's discretion to make
reasonable ad hoc policy determinations consistent with its statutory mandate. Nevertheless, we addressed
whether the agency's action was supported by substantial evidence. See id. In the same spirit, we will
assess whether this record contains substantial evidence such that reasonable minds could have reached
Finding of Fact 8 and Conclusion of Law 7. See Texas State Bd. of Dental Examiners v. Sizemore, 759
S.W.2d 114, 116 (Tex. 1988), cert. denied, 490 U.S. 1080 (1989); Texas Health Facilities Comm'n
v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984). The agency's findings, inferences
and conclusions are presumed to be supported by substantial evidence, and the appealing party bears the
burden of showing a lack of substantial evidence. Charter Medical, 665 S.W.2d at 453.

 Industrial Utilities contends that the lack of evidence on the amount of its expenses means
no evidence existed on their reasonableness or necessity. We disagree. The agency was entitled to
consider the remarks of Industrial Utilities' president and legal counsel in determining whether the expenses
incurred in bringing the application were reasonable and necessary. Mr. Hardy unequivocally stated that
Industrial Utilities did not want the Commission to approve the surcharge. This statement alone is some
evidence supporting the disputed finding. The record is replete with other statements by both Hardy and
the utility's lawyer indicating that the surcharge would be detrimental to Industrial Utilities. Nearly all of
Industrial Utilities' evidence related to the financial disadvantages and dubious success of the proposed
surcharge. In its closing statement, Industrial Utilities opined that the surcharge would drive the utility's
customers to seek other water sources and eventually drive Industrial Utilities out of business: "The rate
analysis performed by Industrial Utilities shows that with expected customer meter changes and minimum
well drilling efforts, Industrial Utilities will lose both revenues and customers dramatically if the surcharge
rates are to go into effect." It further devoted an entire section to arguing the "Surcharge Funding is not in
the Public Interest." We conclude that the record contained substantial evidence to support the
Commission's Finding of Fact 8 and Conclusion of Law 7. We overrule Industrial Utilities' first point of
error.

 Assuming without deciding that Industrial Utilities has preserved its second point of error
concerning Finding of Fact 12, we hold that the Commission's decision is supported by Finding of Fact
8. Even if Industrial Utilities presented some evidence in support of its application, the utility unequivocally
asked the Commission to deny the surcharge. For the reasons we have discussed above, the Commission
could have determined that any expenses incurred in seeking a surcharge it did not want were
unreasonable, unnecessary or not in the public interest and that the utility's customers should never have
to pay them. We overrule the second point of error and do not reach the Commission's cross appeal.


CONCLUSION


 Finding no error, we affirm the district court's judgment upholding the Commission's order.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: June 19, 1997

Publish

1. Subsidence is the sinking of land surface caused by withdrawal of underground water. Harris and
Galveston counties have an abundance of inexpensive fresh water lying in two underground aquifers, but
the growth of water demands in this metropolitan coastal area began to create a huge subsidence problem. 
The Harris Galveston Coastal Subsidence District was created in 1975 to reduce ground water withdrawal
by requiring industries to convert to the use of surface water from rivers and canals. Providing surface
water is often more expensive than pumping underground water. This increased expense is the difficulty
faced by Industrial Utilities in complying with the District's conversion requirement.
2. Industrial Utilities also urged the Commission to reconsider the surcharge application because
subsequent legislation made its proposal more feasible. Industrial Utilities abandoned this point on appeal
to the district court.
3. To obtain a rate increase, a regulated utility must apply for a rate change with the Commission, notify
its customers, and show that the proposed rate is just and reasonable. 30 Tex. Admin. Code § 291.22
(1996). Save certain exceptions, rate change applications are limited to one per year. Id. § 291.23.
4. Rule 291.31 states, "In computing a utility's allowable expenses, only the utility's historical test year
expenses as adjusted for known and measurable changes will be considered." The record also indicates
that this is the Commission's usual practice.
5. We note that the order provision states: "The rate case expenses incurred by Industrial Utilities
Service, Inc. in this proceeding shall not be included in any cost of service that the utility may recover from
its customers." (Emphasis supplied.) Industrial Utilities contends that the Commission's order constitutes
an unlawful advisory opinion to the extent that it "may be construed to preclude the future recoverability
of such expenditures in a future cost of service proceeding." Of course, Industrial Utilities may seek any
future expenses it incurs in bringing another application. The Commission's order clearly pertains only to
the expenses incurred in the present case.


ation were reasonable and necessary. Mr. Hardy unequivocally stated that
Industrial Utilities did not want the Commission to approve the surcharge. This statement alone is some
evidence supporting the disputed finding. The record is replete with other statements by both Hardy and
the utility's lawyer indicating that the surcharge would be detrimental to Industrial Utilities. Nearly all of
Industrial Utilities' evidence related to the financial disadvantages and dubious success of the proposed
surcharge. In its closing statement, Industrial Utilities opined that the surcharge would drive the utility's
customers to seek other water sources and eventually drive Industrial Utilities out of business: "The rate
analysis performed by Industrial Utilities shows that with expected customer meter changes and minimum
well drilling efforts, Industrial Utilities will lose both revenues and customers dramatically if the surcharge
rates are to go into effect." It further devoted an entire section to arguing the "Surcharge Funding is not in
the Public Interest." We conclude that the record contained substantial evidence to support the
Commission's Finding of Fact 8 and Conclusion of Law 7. We overrule Industrial Utilities' first point of
error.

 Assuming without deciding that Industrial Utilities has preserved its second point of error
concerning Finding of Fact 12, we hold that the Commission's decision is supported by Finding of Fact
8. Even if Industrial Utilities presented some evidence in support of its application, the utility unequivocally
asked the Commission to deny the surcharge. For the reasons we have discussed above, the Commission
could have determined that any expenses incurred in seeking a surcharge it did not want were
unreasonable, unnecessary or not in the public interest and that the utility's customers should never have
to pay them. We overrule the second point of error and do not reach the Commission's cross appeal.


CONCLUSION


 Finding no error, we affirm the district court's judgment upholding the Commission's order.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: June 19, 1997

Publish

1. Subsidence is the sinking of land surface caused by withdrawal of underground water. Harris and
Galveston counties have an abundance of inexpensive fresh water lying in two underground aquifers, but
the growth of water demands in this metropolitan coastal area began to create a huge subsidence problem. 
The Harris Galveston Coastal Subsidence District was created in 1975 to reduce ground water withdrawal
by requiring industries to convert to the use of surface water from rivers and canals. Providing surface
water is often more expensive than pumping underground water. This increased expense is the difficulty
faced by Industrial Utilities in complying with the District's conversion requirement.
2. Industrial Utilities also urged the Commission to reconsider the surcharge application because
subsequent legislation made its proposal more feasible. Industrial Utilities abandoned this point on appeal
to the district court.
3. To obtain a rate increase, a regulated utility must apply for a rate change with the Commission, notify
its customers, and show that the proposed rate is just and reasonable. 30 Tex. Admin. Code § 291.22
(1996). Save certain exceptions, rate change applications are limited to one per year. Id. § 291.23.
4. Rule 291.31 states, "In computing a utility's allowable expenses, only the utility's historical test year
expenses as adjusted for known and measurable changes will be considered." The record also indicates
that this is the Commission's usual practice.
5. We note that the order provision states: "The rate case expenses incurred by Industrial Utilities
Service, Inc. in this proceeding shall not be included in any cost of service that the utility may recover from
its customers." (Emphasis supplied.) Industrial Utilities contends that the Commission's order constitutes
an unlawful advisory opinion to the extent that it "may be construed to preclude the future recoverability
of such expenditures in a future cost of service proceeding." Of cou