# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00233-CV

Oncor Electric Delivery Company LLC, Appellant

**v.**

Public Utility Commission of Texas, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-10-000172, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

Oncor Electric Delivery Company LLC sued for judicial review of a final order issued by the Public Utility Commission denying the recovery of certain rate-case expenses under the Public Utility Regulatory Act (PURA).[1] *See* Tex. Util. Code §§ 11.001-66.016. The district court affirmed the Commission's final order. In its order, the Commission found that Oncor was entitled to recover its reasonable and necessary rate-case expenses incurred directly in connection with the underlying system-wide rate case.[2] The Commission explained that the parties had settled the issues of recoverability and reasonable and necessary amounts of those expenses. As part of the

---

[1] The issues involving rate-case expenses had been severed from a system-wide rate case brought by Oncor in 2008. The system-wide rate case is the subject of a separate appeal to this Court. *See State of Texas' Agencies & Insts. of Higher Learning v. Public Util. Comm'n*, No. 03-11-00072-CV (Tex. App.—Austin) (filed Feb. 8, 2011).

[2] "Rate-case expenses" are costs incurred by parties participating in a ratemaking proceeding. *See* Tex. Util. Code § 36.061(b)(2).

settlement, the parties had also stipulated to the reasonable and necessary amounts of rate-case expenses that were associated with two municipal show-cause proceedings (the "2004 and 2005 expenses") and a prior rate case that had been initiated by Commission staff and withdrawn in 2008 (the "Docket No. 34040 expenses"), but the parties did not reach agreement on the recoverability of those expenses. The Commission disagreed with the administrative law judge's proposal for decision recommending that Oncor recover those expenses and instead found that Oncor was not entitled to recover them. In two issues on appeal, Oncor contends that the district court erred by affirming the Commission's order because the Commission (1) acted arbitrarily, capriciously, and contrary to law when it denied Oncor recovery of its rate-case expenses associated with the prior proceedings and (2) erred by finding it lacked jurisdiction to hear Oncor's claim for its 2004 and 2005 expenses. We conclude that the Commission (1) had jurisdiction to hear Oncor's claim for the 2004 and 2005 expenses and (2) acted arbitrarily and capriciously by denying Oncor recovery of its expenses incurred in prior proceedings. Accordingly, we will reverse the district court's judgment affirming the Commission's order, reverse the Commission's order, and remand the cause to the Commission for proceedings consistent with this opinion.

## BACKGROUND

We provide a brief overview of the ratemaking process to assist in understanding the issues that led to this appeal. PURA establishes a regulatory process for ratemaking with a goal of allowing the utility "a reasonable opportunity to earn a reasonable return" after recovering its reasonable and necessary operating expenses. *See id.* § 36.051. Under PURA, the Commission and individual municipalities share jurisdiction over the regulation of utilities, including the

2

establishment and regulation of rates.[3]  To establish a utility's rates, the appropriate regulatory authority must quantify the utility's invested capital "used and useful in providing service to the public," the appropriate rate of return on that invested capital, and the utility's reasonable and necessary operating expenses.[4]  *Id.*  The utility's reasonable and necessary operating expenses to be included in the utility's rates may include reasonable rate-case expenses.  *See id.* § 36.061(b)(2) (establishing that "[t]he regulatory authority may allow as a cost or expense . . . reasonable costs of participating in a [ratemaking] proceeding" in amount that regulatory authority approves).

Oncor is a regulated electric utility company that applied to the Commission for authorization to change its system-wide rates on June 27, 2008 (the "system-wide rate case"). As part of its requested revenue increase, Oncor initially sought recovery under PURA section 36.061(b)(2) of its reasonable and necessary rate-case expenses totaling $11,477,898.40.  After the parties settled the issues related to reasonable and necessary amounts of all expenses and the recoverability of the expenses related to the system-wide rate case, Oncor sought a total of $10,127,047.86 in its own expenses.  Of that total, $6,737,009.70 was for Oncor's expenses incurred directly in connection with the system-wide rate case; $1,540,004.81 was for Oncor's 2004 and 2005 expenses; and $1,850,053.35 was for Oncor's Docket No. 34040 expenses.

---

[3] *See* Tex. Util. Code §§ 32.001(a) (establishing Commission's exclusive original jurisdiction over electric utility's rates, operations, and services in areas outside municipality and in areas within municipality that surrenders jurisdiction to Commission), (b) (establishing Commission's exclusive appellate jurisdiction over municipality orders); 33.001 (establishing municipality's exclusive original jurisdiction over electric utility's rates, operations, and services in municipality's area), .002 (establishing mechanism by which municipality can elect to have Commission exercise exclusive original jurisdiction over electric utility).

[4] The statute defines "regulatory authority" as "either the [C]ommission or the governing body of a municipality, in accordance with the context."  *See* Tex. Util. Code § 11.003(18).

The 2004 and 2005 expenses stem from two municipal regulatory proceedings. In 2004, 23 cities with exclusive original jurisdiction over Oncor's rates passed resolutions requiring Oncor to show good cause why its transmission and distribution rates should not be reduced. An additional 87 cities later joined the other cities in the show-cause action. Oncor and the cities reached a settlement in February 2005, which was extended and modified in January 2006.[5] The settlement agreement provided that Oncor would seek recovery of its rate-case expenses from the municipal proceedings in its next system-wide rate case, which it agreed to file by July 1, 2008.

Before Oncor filed a system-wide rate case, Commission staff filed Docket No. 34040 in August 2007 to review Oncor's rates. Oncor sought recovery for the 2004 and 2005 expenses and its estimated expenses for Docket No. 34040 as part of its rate-filing package in that proceeding. The parties jointly requested dismissal of the Docket No. 34040 rate case as part of the settlement of another case in which the Commission approved the merger between Oncor's parent corporation (TXU Corporation) and Texas Energy Future Holdings Limited Partnership. The order of dismissal in Docket No. 34040 did not address Oncor's requested rate-case expenses. No party requested or obtained recovery of rate-case expenses in the merger case, and the issue of recovery of rate-case expenses was not addressed in the settlement agreement. Like the municipal-cases settlement agreement, the merger-case settlement agreement provided that Oncor would file a system-wide rate case by July 1, 2008.

---

[5] The February 2005 settlement agreement is considered the 2004 show-cause action, and the January 2006 extension and modification of the settlement agreement is considered the 2005 show-cause action. Oncor agreed to extend the terms and conditions of these agreements to all of the cities within Oncor's service area. All of those cities passed ordinances ratifying those agreements or otherwise received the benefits of those agreements.

Oncor filed the agreed-upon system-wide rate case with the Commission on June 27, 2008. As part of its rate-filing package, Oncor again sought recovery for the 2004 and 2005 expenses, and it also sought recovery of its expenses for Docket No. 34040 in addition to its expenses incurred in filing the system-wide rate case. Oncor based its rate-filing package on actual 2007 test-year books and records, adjusted for known and measurable changes. When Oncor filed the system-wide rate case with the Commission, it also filed its application for authorization to change rates and its rate-filing package with each incorporated city in its service area that has original jurisdiction over its rates. After the original-jurisdiction cities passed rate ordinances denying Oncor's requested increase in rates, Oncor appealed those ordinances to the Commission, and the appeals were consolidated with the system-wide rate case.

In early 2009, the issue of rate-case expenses was severed from the system-wide rate case. As mentioned earlier, the parties entered into a partial settlement of the rate-case expense issues in which they stipulated to the reasonable and necessary amounts and recoverability of the expenses incurred in direct connection with the system-wide rate case. They also stipulated to the reasonable and necessary amounts of the 2004 and 2005 expenses and the Docket No. 34040 expenses. The parties were unable to agree on the recoverability of those expenses or upon which customer class would be responsible for paying the rate-case expenses and which recovery mechanism would be used.

A contested-case hearing on these issues was held before an administrative law judge (ALJ). The ALJ issued a proposal for decision in which she found that Oncor was entitled to recover all the rate-case expenses that it had requested, including the 2004 and 2005 expenses and the

Docket No. 34040 expenses. She also found that the expenses should be recovered from all Oncor customers through a surcharge over a three-year period.

The Commission disagreed with the ALJ's findings in part. The Commission agreed that Oncor, the Steering Committee of Cities Served by Oncor, and the Alliance of TXU/Oncor Customers should recover their rate-case expenses associated with the system-wide rate case through a surcharge on Oncor's customers' bills. But the Commission also determined that Oncor should not recover the 2004 and 2005 expenses or the Docket No. 34040 expenses. The Commission found that it never obtained jurisdiction over the 2004 and 2005 municipal show-cause actions or any of the expenses addressed in those cases because the cases were never appealed to the Commission. As a result, the Commission concluded that Oncor was not entitled to recover the 2004 and 2005 expenses in this proceeding. In addition, the Commission determined that Oncor was not entitled to recover the 2004 and 2005 expenses or the Docket No. 34040 expenses because those expenses were not incurred during the test year for the system-wide rate case, which was 2007. The Commission stated that (1) its substantive rule 25.231(b) does not provide for recovery of past expenses, including rate-case expenses, that occurred outside the test year and (2) "[r]ate-case expenses must be addressed in the proceeding in which they were incurred unless the Commission authorizes their consideration in a future proceeding." Oncor had not requested in Docket No. 34040 that the Commission allow it to seek recovery of its expenses for that case in a future proceeding. Therefore, the Commission found that Oncor was not entitled to recover its expenses for Docket No. 34040 in the system-wide rate case.

The Commission deleted certain findings of fact and conclusions of law from the ALJ's proposal for decision and added other findings and conclusions to reflect its determination on the rate-case issues. The Commission deleted the findings of fact that specified Oncor's reasonable, necessary, and legally recoverable rate-case expenses for the 2004 and 2005 municipal proceedings and for Docket No. 34040, as well as the total amount of expenses that Oncor sought to recover in the system-wide rate case. It also deleted the conclusion of law stating that the Commission has jurisdiction over the 2004 and 2005 expenses, the Docket No. 34040 expenses, and the system-wide rate-case expenses under PURA section 32.001(b). The Commission replaced the findings of fact with the following findings:

2A.    The test year for rate-case expenses for [the system-wide rate case] was January 1 through December 31, 2007.

. . . .

12A.    Rate-case expenses Oncor incurred for Docket No. 34040 were outside the 2007 test year for [the system-wide rate case].

12B.    Oncor did not request and the Commission did not authorize recovery of the rate-case expenses in Docket No. 34040 in any future proceeding.

12C.    It is not in the public interest for a utility to recover rate-case expenses that were incurred outside the test year and are unrelated to the rate-case proceeding under consideration absent prior Commission authorization.

12D.    Oncor's Docket No. 34040 expenses of $1,850[,]033.35 are not recoverable.

. . . .

13A.    Oncor incurred the 2004 and 2005 expenses outside the 2007 test year.

13B.    The 2004 and 2005 show-cause actions involved a review of rates within the exclusive jurisdiction of the participating cities.

7

13C. The 2004 and 2005 show-cause actions resulted in settlements between the participating cities and Oncor.

13D. Oncor did not appeal the actions of the participating cities to the Commission under PURA § 32.001(b); the Commission's appellate jurisdiction was never invoked.

13E. The Commission does not have jurisdiction over the 2004 and 2005 show-cause actions or any of the expenses addressed in those matters.

13F. Oncor's 2005 expenses of $412,887.50 are not recoverable.

. . . .

14A. Oncor's 2004 expenses of $1,127,117.31 are not recoverable.

. . . .

15A. The total amount of Oncor's reasonable, necessary, and legally recoverable rate-case expenses approved for recovery in this Docket No. 36530 is $8,600,193.49.[6]

The Commission replaced the deleted conclusion of law with the following conclusions:

4A. The Commission has jurisdiction over the [system-wide rate case] expenses pursuant to PURA § 32.001(b).

4B. The Commission has no jurisdiction over the 2004 and 2005 show-cause expenses.

4C. Expenses from Docket No. 34040 were not preserved.

Oncor appealed the Commission's order on rehearing to the district court, which affirmed the order. This appeal followed.

---

[6] This total includes the stipulated rate-case expenses requested by the Steering Committee of Cities Served by Oncor and the Alliance of TXU/Oncor Customers.

**DISCUSSION**

Oncor challenges the Commission's order in two issues. Oncor asserts that the Commission acted arbitrarily, capriciously, and contrary to law in denying Oncor recovery of its 2004 and 2005 expenses and its Docket No. 34040 expenses. Oncor also contends that the Commission erred by finding that it lacks jurisdiction to consider Oncor's claim for the 2004 and 2005 expenses. We turn first to the jurisdictional issue.

**Jurisdiction over the 2004 and 2005 expenses**

In its final order, the Commission determined that the cities involved in the municipal show-cause actions had never surrendered their original jurisdiction over the rate-case expenses or reasonableness of those expenses to the Commission under PURA sections 33.002 or 33.004(a). Section 33.002 provides that a municipality regulates all local utility service in the municipality unless and until the Commission assumes jurisdiction over a local utility because the municipality elects to have the Commission exercise exclusive original jurisdiction over electric utility rates, operations and services. Tex. Util. Code § 33.002. Section 33.004(a) provides that if a municipality has not surrendered its jurisdiction, local utility service in the municipality is exempt from regulation by the Commission to the extent that subtitle B of PURA applies to local service. *Id.* § 33.004(a).

The Commission further reasoned that its appellate jurisdiction was never invoked because Oncor did not appeal the 2004 and 2005 show-cause actions under PURA section 32.001(b). Section 32.001(b) gives the Commission exclusive appellate jurisdiction to review an order or ordinance of a municipality exercising its statutory exclusive original jurisdiction. *Id.* § 32.001(b). While Oncor does not disagree with the Commission that the cities had never surrendered their

9

original jurisdiction to the Commission, it does challenge the Commission's conclusion that Oncor never invoked the Commission's section 32.001(b) appellate jurisdiction.

Oncor acknowledges that it never appealed the 2004 and 2005 show-cause actions to the Commission. Oncor and the cities settled those actions, which therefore did not result in appealable orders. But, as noted above, the settlements included the cities' specific authorization for Oncor to request recovery of the 2004 and 2005 expenses in Oncor's next system-wide rate case. In the 2008 system-wide rate case (the case from which this expense proceeding was severed), Oncor filed its rate-filing package with the Commission and its original-jurisdiction cities and included in that package its request for recovery of the deferred 2004 and 2005 expenses, as it and the cities had agreed. The cities denied Oncor's requested rate increase in the 2008 case and thus also denied its recovery of the 2004 and 2005 expenses. Oncor appealed the cities' denial of its requested rate increase to the Commission as provided in PURA section 32.001(b). Oncor contends that under section 32.001(b)'s broad grant of jurisdiction, the Commission consequently had jurisdiction to consider the cities' denial of Oncor's expenses, which was included in the cities' denial of its rate increase. In the alternative, Oncor argues that even if the Commission did not have jurisdiction under section 32.001(b), PURA section 14.001 provides the Commission with the implied authority to consider the 2004 and 2005 expenses.

Determining an agency's jurisdiction requires statutory construction and thus is a question of law that we review de novo. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002) (analyzing whether agency had primary or exclusive jurisdiction over issue). Our primary objective is to give effect to the intent of the legislature, "which, when

10

possible, we discern from the plain meaning of the words chosen." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We will generally accept the ordinary meaning of the words used, unless given a specific statutory definition, and will not give them a forced or exaggerated meaning. *City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002). We consider statutes as a whole rather than their isolated provisions. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438-39 (Tex. 2011). We presume that the legislature chooses a statute's language with care, purposefully choosing each word it includes, while purposefully omitting words not chosen. *Id.* If a statute affecting an agency's jurisdiction is ambiguous, we give some deference to how an agency construes it, but only if the agency's interpretation is reasonable and does not contradict the statute's plain language. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011) (explaining that courts' deference to agency statutory interpretation only applies to ambiguous statutes); *AT&T Commc'ns of Tex., L.P. v. Southwestern Bell Tel. Co.*, 186 S.W.3d 517, 529-30 (Tex. 2006) (noting that courts offer some deference to agencies' reasonable construction of statutes affecting their jurisdiction).

Section 32.001(b) provides that "[t]he commission has exclusive appellate jurisdiction to review an order or ordinance of a municipality exercising exclusive original jurisdiction under this subtitle." Tex. Util. Code § 32.001(b). The plain language of the statute establishes the Commission's appellate jurisdiction over *any* order or ordinance issued by a municipality exercising its exclusive original jurisdiction over an electric utility. *See id.* The Commission does not contend in this case that the municipalities lacked jurisdiction to consider the rate-case expenses from the 2004 and 2005 proceedings in a later proceeding. Instead, it asserts that Oncor could not invoke the Commission's

11

appellate jurisdiction over the 2004 and 2005 rate-case expenses by seeking them in the 2008 system-wide rate case, as Oncor and the cities had agreed Oncor would do. In other words, the Commission appears to argue that a party cannot invoke the Commission's jurisdiction over rate-case expenses incurred in a proceeding that did not result in an appealable order by seeking those expenses in a later proceeding. The Commission, however, has not advanced any construction of the statute that supports this argument.

This Court has previously considered the breadth of the Railroad Commission's analogous appellate jurisdiction over municipalities' orders related to rate-case expenses in ratemaking cases decided under the Gas Utility Regulatory Act (GURA). *See City of Amarillo v. Railroad Comm'n*, 894 S.W.2d 491, 494-95 (Tex. App.—Austin 1995, writ denied). In that case, the City of Amarillo asserted that the Railroad Commission lacked jurisdiction to reconsider any portion of the City's consulting fees that the City had assessed against a gas company in the initial contested ratemaking proceeding before the city commissioner. *Id.* at 494. Similarly to PURA, GURA provides that a municipality may hire experts to assist or represent it when it conducts or participates in ratemaking proceedings and that the utility must reimburse the municipality for the reasonable costs of those services "to the extent the applicable regulatory authority determines reasonable." Tex. Util. Code § 103.022(b); *see also City of Amarillo*, 894 S.W.2d at 494 (quoting prior version of GURA). The City argued that it had exclusive jurisdiction to determine the allowable expenses it incurred to evaluate the gas company's initial filing at the local level, or conversely, that the Railroad Commission's appellate jurisdiction was limited to reviewing the rates established by the municipality without reviewing the City's determination of reimbursable rate-case expenses. *City of Amarillo*, 894 S.W.2d at 494.

To determine the Railroad Commission's jurisdiction, this Court interpreted provisions of GURA that are almost identical to the PURA provisions at issue here. The Railroad Commission conducts appeals de novo. *Id.* (citing prior version of GURA; current provision found at Tex. Util. Code § 103.055). GURA vests the Railroad Commission with "exclusive appellate jurisdiction to review all orders or ordinances of municipalities as provided in this Act." *Id.* (quoting prior version of GURA).[7] GURA defines an order as "the whole or part of the final disposition, whether affirmative, negative, injunctive, or declaratory in form, of the regulatory authority other than rulemaking but including rate setting." *Id.* at 494-95 (quoting prior version of GURA).[8] We concluded that when these provisions were read in the context of the act as a whole, the legislature had given the Railroad Commission a "broad grant of jurisdiction to review all municipality orders, coupled with its authority to conduct appeals de novo," enabling the Railroad Commission to reexamine on appeal the rate-case expenses a municipality awards in a local rate proceeding. *Id.* at 495.

PURA similarly provides that the Commission conducts appeals of municipal orders de novo. *See* Tex. Util. Code § 33.054(a). As previously noted, section 32.001(b) gives the Commission exclusive appellate jurisdiction to review orders or ordinances of municipalities exercising their exclusive original jurisdiction. *Id.* § 32.001(b). Like GURA, PURA defines an

[7] The current version of GURA similarly provides that "[t]he railroad commission has exclusive appellate jurisdiction to review an order or ordinance of a municipality exercising exclusive original jurisdiction as provided by this subtitle." Tex. Util. Code § 102.001.

[8] The current version of GURA similarly provides that "'[o]rder' means all or a part of a final disposition by a regulatory authority in a matter other than rulemaking, without regard to whether the disposition is affirmative or negative or injunctive or declaratory. The term includes the setting of a rate." *Id.* § 101.003(9).

13

"order" as "all or a part of a final disposition by a regulatory authority in a matter other than rulemaking, without regard to whether the disposition is affirmative or negative or injunctive or declaratory." *Id.* § 11.003(13). PURA section 36.061(b)(2) provides that "[t]he regulatory authority may allow as a cost or expense . . . reasonable costs of participating in a proceeding under this title not to exceed the amount approved by the regulatory authority." *Id.* § 36.061(b)(2).

We conclude that when these provisions are read in the context of the act as a whole, there is nothing in the statutory language of PURA that precludes the Commission from exercising its broad grant of jurisdiction and reviewing rate-case expenses for a prior municipal regulatory proceeding that are sought by a utility and denied by a municipality in a later regulatory proceeding. The Commission's argument that it does not have jurisdiction over the 2004 and 2005 expenses contradicts the plain language of PURA. The cities, acting as regulatory authorities exercising their exclusive original jurisdiction in municipal proceedings, had authorized Oncor to request expenses from those settled 2004 and 2005 proceedings in its next system-wide proceeding. Then the cities, acting as regulatory authorities exercising their exclusive original jurisdiction in the 2008 system-wide case, issued final dispositions denying Oncor's request for rates and its accompanying request for those prior rate-case expenses. The Commission's appellate jurisdiction encompasses the cities' orders denying Oncor's request for rate-case expenses from earlier proceedings. Accordingly, we sustain Oncor's second issue.[9]

---

[9] We need not reach Oncor's alternative argument that PURA provides the Commission with implied authority to consider the 2004 and 2005 expenses because we have determined that PURA provides the Commission with express appellate jurisdiction to consider the cities' denial of those expenses in the 2008 rate case. *See* Tex. R. App. P. 47.1 (court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal).

14

**Recoverability of rate-case expenses from prior proceedings and outside the test year**

> ***The legislature designed PURA's ratemaking process to allow a utility to recover its actual, reasonable, and necessary operating expenses***

In its first issue, Oncor challenges the Commission's decision that rate-case expenses from prior proceedings and outside the test year are not recoverable unless the Commission has provided prior authorization to seek those expenses in a later proceeding. Oncor contends that the Commission's ruling is an arbitrary and capricious change from existing precedent and practice, as well as contrary to PURA and Oncor's statutory right to recover its reasonable and necessary rate-case expenses. The Commission argues that Oncor has not shown that the Commission always allows recovery of expenses from prior cases or from cities' prior final orders without Commission authorization or that the Commission has an established policy of always allowing recovery of rate-case expenses incurred outside the test year. Moreover, the Commission contends that Oncor cannot rely on the Commission's treatment of other utilities to show that its treatment of Oncor was arbitrary and capricious.

Some additional statutory context is necessary to understand the merits of the parties' contentions. As mentioned previously, the goal of the ratemaking process is to allow the utility to recover total revenues equal to its cost of service. *See* Tex. Util. Code § 36.051; *see also Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 362-63 (Tex. 1983). The utility's cost of service includes a reasonable return on invested capital and its reasonable operating expenses, among other categories of expenses. *See Suburban Util.*, 652 S.W.2d at 362. The utility's operating expenses may include reasonable rate-case expenses. *See* Tex. Util. Code § 36.061(b)(2). The expenses

15

accounted for in the utility's cost of service are "limited to amounts actually realized or which can be anticipated with reasonable certainty." *Suburban Util.*, 652 S.W.2d at 362.

The Commission sets rates for an indefinite period in the future based on the utility's past costs. *Id.* at 366. The Commission begins by considering revenue and expense data from a historic test year. *See Public Util. Comm'n v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 411 (Tex. 1995); *see also* 16 Tex. Admin. Code § 25.234(b) (2013) (Pub. Util. Comm'n of Tex., Rate Design) ("Rates will be determined using revenues, billing and usage data for a historical test year adjusted for known and measurable changes, and costs of service as defined in § 25.231 . . . ."). Those test-year expenses must be adjusted for known and measurable changes to ensure that they will more accurately reflect future costs. *GTE-Southwest, Inc.*, 901 S.W.2d at 411; 16 Tex. Admin. Code § 25.231(b) (2013) (Pub. Util. Comm'n of Tex., Cost of Service). The Commission may consider expenses outside the test year "when necessary to achieve just and reasonable rates." *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 188 (Tex. 1994). This discretion enables the Commission to make the test year as representative as possible of the expected future cost situation. *Id.*

PURA specifically addresses the allowance of rate-case expenses as an operating expense. The statute establishes that "the regulatory authority may allow as a cost or expense . . . reasonable costs of participating in a proceeding under this title [PURA] not to exceed the amount approved by the regulatory authority." Tex. Util. Code § 36.061(b)(2). Although section 36.061(b)(2) gives the Commission the discretion to disallow improper expenses, this discretion is tempered by section 36.051's mandate that the utility must be allowed to recover its operating expenses and a reasonable return on invested capital. *See Suburban Util.*, 652 S.W.2d at 362-63

16

(discussing prior version of PURA). The effect of disallowing improper expenses is to charge those expenses to the utility's stockholders instead of to the ratepayers. *Id.* As a result, disallowance of expenses results in reducing the return the utility earns on the rate base. *Id.* The ratemaking process satisfies PURA's requirement of a reasonable return only if the utility's return on capital is sufficient to ensure confidence in the financial integrity of the utility to enable it to maintain its credit and to attract capital. *Id.* As a result, the supreme court has concluded that "it is important that regulatory agencies do not arbitrarily disallow expenditures. If the expense can be shown to be actual, necessary and reasonable it should be allowed." *Id.* at 363 (holding that Commission acted arbitrarily and capriciously by disallowing federal income-tax expense as cost of service).

### *The Commission's final order disallowed recovery of expenses from prior proceedings because it had not authorized their consideration in a later proceeding*

In its final order, the Commission determined that Oncor should not recover the 2004 and 2005 expenses or the Docket No. 34040 expenses because they were not incurred during the test year for the system-wide rate case, which was 2007.[10] The Commission further stated that:

> Rate-case expenses must be addressed in the proceeding in which they were incurred unless the Commission authorizes their consideration in a future proceeding. . . . The Commission finds it is not in the public interest to permit companies to recover rate-case expenses that were incurred outside the test year and are unrelated to the rate-case proceeding absent prior Commission authorization.

---

[10] The Commission stated that it was denying Oncor's request for the 2004 and 2005 expenses because the expenses were not incurred during the test year, despite its determination that it did not have jurisdiction to consider Oncor's request for those 2004 and 2005 expenses. We have concluded that the Commission had jurisdiction to consider the request; consequently, we will consider whether the Commission also erred by denying Oncor's request because the 2004 and 2005 expenses were incurred outside the test year.

17

The Commission did not provide any analysis explaining why allowing recovery of rate-case expenses that were incurred outside the test year and are unrelated to the underlying rate-case proceeding without prior Commission authorization is not in the public interest.

### *The Commission imposed a new prior-authorization requirement for preserving recovery of rate-case expenses—without first notifying Oncor*

The Commission's ruling that the rate-case expenses from prior cases are not recoverable appears upon first reading to have three components—the Commission held that it was not in the public interest for companies to recover rate-case expenses that (1) were incurred outside the test year and (2) are unrelated to the rate-case proceeding (3) absent prior Commission authorization.[11] The Commission, however, maintains on appeal that its ruling should not be read to mean that it now requires prior approval of all rate-case expenses that occur outside the test year (i.e., including rate-case expenses for a current proceeding). Instead, the Commission clarifies that its ruling requiring prior authorization for outside-the-test-year expenses applies only to rate-case expenses that are from an earlier proceeding.

We will separately consider the outside-the-test-year and earlier-proceeding factors of the Commission's position that prior authorization is required to recover expenses in a later proceeding. Because the Commission's order states that "[r]ate-case expenses must be addressed in the proceeding in which they were incurred" absent prior authorization, it appears that the

---

[11] Oncor argues on appeal that the 2004, 2005, and Docket No. 34040 expenses cannot be considered "unrelated" to the underlying system-wide rate case because the settlement of the 2004 and 2005 cases and the dismissal of Docket No. 34040 were conditioned upon Oncor's bringing the system-wide rate case no later than 2008. It appears from the Commission's appellate briefing that the term "unrelated" as used in its order means "incurred in an earlier proceeding."

18

Commission requires prior authorization to preserve expenses for a later proceeding even if those expenses happen to have been incurred during the test year for the later proceeding. Consequently, the earlier-proceeding factor appears to be the determinative issue for the Commission's prior-authorization preservation requirement. Thus, we first consider whether it was arbitrary and capricious for the Commission to decide not to allow the rate-case expenses from earlier proceedings because Oncor had not obtained the Commission's prior approval to seek the expenses in a later case.

We must reverse the Commission's order if the Commission's action was arbitrary or capricious. *See* Tex. Gov't Code § 2001.174(2)(F); *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 210-11 (Tex. 1991). An agency's decision is arbitrary when its final order denies parties due process of law. *See Lewis v. Metropolitan Sav. & Loan Ass'n*, 550 S.W.2d 11, 16 (Tex. 1977). While we may not substitute our judgment for the agency's, the agency's decision must manifest a rational connection to the facts. *Starr Cnty. v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 355-56 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.). When we review an agency decision for arbitrariness or capriciousness, our chief concern is that "parties must be able to know what is expected of them in the administrative process." *Id.* at 356.

Oncor challenges the Commission's imposing the new prior-authorization preservation requirement without providing notice or a reasonable explanation for its departure from prior practice. According to Oncor, before issuing the order in this case, the Commission had never required a utility to obtain the Commission's prior authorization to seek recovery of expenses from one proceeding in another proceeding. The Commission, on the other hand, asserts that Oncor has not shown a Commission policy or practice to always include rate-case expenses from previous, closed

19

dockets in a later proceeding. The Commission further argues that Oncor inappropriately relies on the Commission's treatment of different utilities in different dockets involving different facts when attempting to show that the Commission's treatment of Oncor was arbitrary and capricious.

Oncor provides examples of other cases in which no prior authorization had been sought or granted, but expenses were recovered in a later proceeding.[12] In addition, our review of Commission dockets has revealed other examples of cases in which the Commission did not grant authorization in an earlier case to seek that case's expenses in a later case, but nevertheless allowed recovery of the earlier case's expenses in a later case.[13] The Commission, on the other hand, offers

---

[12] Oncor cites a similar proceeding in which the rate-case expense issues were severed from a system-wide rate case in which the utility had requested rate-case expenses from other proceedings. *See* Tex. Pub. Util. Comm'n, *Proceeding to Consider Rate Case Expenses Severed from Docket No. 33310 (Application of AEP Texas North Company for Authority to Change Rates) and Docket No. 33309 (Application of AEP Texas Central Company for Authority to Change Rates)*, Docket No. 34301 (May 23, 2008) (order). The Commission allowed recovery of the rate-case expenses from prior proceedings, even though in two of the prior proceedings there was no language in the final order contemplating recovery of the expenses in a later proceeding. *See* Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company and CPL Retail Energy, LP to Determine True-Up Balances Pursuant to PURA § 39.262 and Petition to Determine Amount of Excess Mitigation Credits to Be Refunded and Recovered*, Docket No. 31056 (April 4, 2006) (order on rehearing); Tex. Pub. Util. Comm'n, *Application of Central Power and Light Company for Authority to Reconcile Fuel Costs*, Docket No. 27035 (June 3, 2005) (order on rehearing).

[13] One of the cases included in Docket No. 34301 was Docket No. 32758. In Docket No. 32758, AEP requested rate-case expenses from several other proceedings. Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company for a Competition Transition Charge Pursuant to PUC Subst. R. 25.263(n)*, Docket No. 32758 (Feb. 2, 2007) (order on rehearing). In some of those proceedings, the order does not refer to a request for rate-case expenses or provide Commission authorization to seek the expenses in a later case. *See* Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company for a Financing Order*, Docket No. 32475 (June 21, 2006) (financing order); Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company for Good Cause Exception to True-Up Filing Schedule*, Docket No. 30762 (May 27, 2005) (order); Tex. Pub. Util. Comm'n, *Joint Application of AEP Texas Central Company and Texas Genco for Transfer of Responsibility for Administration of Nuclear Decommissioning Trust Funds*, Docket No. 30749 (May 11, 2005) (order); Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company for Approval of Environmental Cleanup Costs Plan*, Docket No. 27207 (Sept. 26, 2003) (order).

no example of any case before Oncor's in which it denied recovery of expenses because of lack of prior authorization to seek them in a later proceeding.

Instead, the Commission argues that the AEP case cited by Oncor does not establish an agency policy or practice of always allowing recovery of expenses from previous closed cases or cities' final orders in which the Commission had not authorized later consideration of expenses. But the issue here is not whether the Commission has *always* allowed recovery of expenses from earlier cases in later cases without prior authorization—the issue is whether the Commission had ever previously announced its prior-authorization requirement.

The Commission further contends that its different treatment of utilities in other proceedings cannot be compared to Oncor's case without "relevant portions of the records or agreed circumstances of and arguments made in those cases," quoting *Reliant Energy, Inc. v. Public Utility Commission*, 153 S.W.3d 174, 199-200 (Tex. App.—Austin 2004, pet. denied). Contrary to the Commission's implication, however, this Court did not hold in *Reliant Energy* that different treatment of utilities in other cases can never be used to show that a Commission decision in a particular case is arbitrary and capricious. The issues in *Reliant Energy* concerned whether the Commission had correctly calculated the utility's consolidated tax savings, and Reliant complained that the Commission had treated it differently from other utilities by (1) applying a gross-up factor; (2) failing to distinguish between companies and divisions, resulting in an overstatement of losses that should have been used to offset profits from other divisions; and (3) using tax savings to reduce operating expenses instead of the rate base. *Id.* at 199. The Court found, based on the witness testimony and other evidence in the record in Reliant's case, that the Commission's treatment of

21

Reliant was not arbitrary or capricious, even if it differed from the treatment of other utilities. *Id.* at 200-01. Reliant was asking the Court to make fact-specific comparisons of the Commission's tax treatment of it to the tax treatment of other utilities. In that context, the Court correctly stated that it could not accurately compare Reliant's case to other cases without portions of the record or agreed statements about the evidence and arguments presented in those cases. *Id.* at 199-200.

The comparison that Oncor asks us to make in this case, however, is not fact specific. Oncor contends that the Commission acted arbitrarily and capriciously by imposing its new prior-authorization requirement upon Oncor without notice or an explanation for its departure from existing precedent. Oncor compares its treatment to that of other utilities merely to show that the Commission had not previously articulated or enforced this new requirement. The Commission's statement in the final order does not make any exceptions to the prior-authorization requirement or identify any circumstances under which it will not require prior Commission authorization before a utility may seek expenses in a later proceeding. As a result, there is nothing fact specific about the Commission's treatment of other utilities that would affect its application of the requirement stated in the Oncor order. We conclude that it is appropriate for us to consider how the Commission treated other utilities before it issued the Oncor order to determine whether the requirement stated in the Oncor order is new. As discussed above, the Commission has previously allowed utilities to recover rate-case expenses from a prior proceeding in a later proceeding without prior Commission authorization in a number of cases, and it has not pointed out any case in which it determined that a utility had not preserved its expenses because it lacked Commission authorization to seek the expenses in a later proceeding. Accordingly, we conclude that the prior-authorization requirement

22

stated in the Oncor order is a new Commission requirement and a departure from the Commission's prior practice.

Although agencies are not bound to follow their decisions in contested cases in the same way that courts must follow controlling precedent, an agency must explain its reasoning when it departs from prior norms. *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 544-45 (Tex. App.—Austin 2002, pet. denied) (citing *Miner v. Federal Commc'ns Comm'n*, 663 F.2d 152, 157 (D.C. Cir. 1980)). In particular, both state and federal courts require that an agency explain its reasoning when it appears to have departed from its earlier administrative policy or to be inconsistent in its determinations. *See, e.g.*, *id.*; *City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896, 900 (Tex. App.—Austin 1993, writ denied); *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 291 (1st Cir. 1995); *Miner*, 623 F.2d at 157; *National Conservative Political Comm. v. Federal Election Comm'n*, 626 F.2d 953, 959 (D.C. Cir. 1980).

Moreover, both the administrative code and the Commission's rule require the Commission to state in writing its specific reason and the legal basis for changing the ALJ's findings of fact and conclusions of law. *See* Tex. Gov't Code § 2003.049(g) (establishing limits on Commission's ability to change ALJ's findings or conclusions), (h) (requiring written explanation for changes); 16 Tex. Admin. Code 22.262(a), (b) (2013) (Pub. Util. Comm'n of Tex., Decision and Orders). In this case, the Commission's proffered explanation is also one of its new findings of fact: "It is not in the public interest for a utility to recover rate-case expenses that were incurred outside the test year and are unrelated to the rate-case proceeding under consideration absent prior Commission authorization." The Commission did not provide any statutory, rule-based, or precedential

23

support or analysis to support this finding in its order.[14]  More importantly, the Commission presented no evidence at the hearing to support this finding about the circumstances under which recovery of rate-case expenses is "not in the public interest."[15]  *See* Tex. Gov't Code § 2001.174 (requiring agency decisions to be supported by substantial evidence).  Likewise, it provided no support for its conclusion of law that "[e]xpenses from Docket No. 34040 were not preserved." Accordingly, we find that the Commission failed to articulate any rational connection between the facts of this case and its decision.  *See Starr Cnty.*, 584 S.W.2d at 356.

In addition, an agency must respect the due-process rights of parties that appear before it in contested cases.  *See State v. Mid-South Pavers*, 246 S.W.3d 711, 722 (Tex. App.—Austin 2007, pet. denied).  Here, the Commission announced for the first time in the Oncor final order that a party must obtain prior Commission authorization to seek expenses in a later proceeding if the party wants to preserve the right to recover its expenses.  The Commission's decision raises the question of fundamental fairness because it applied the prior-authorization requirement for the first time in its order—after the hearing and long after Oncor could have complied with it to preserve its

---

[14]  We observe that nothing in the plain language of PURA section 36.061(b)(2) limits a party's ability to recover rate-case expenses to the proceeding in which they are incurred.  *See* Tex. Util. Code § 36.061(b)(2).

[15]  We note that PURA section 36.061(b)(2) does not require the Commission to make a public-interest determination when allowing rate-case expenses.  *See id.*  And as previously explained, the supreme court has held that the Commission should allow actual expenses that are shown to be reasonable and necessary.  *See Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 362-63 (Tex. 1983).  While "it is within the Commission's authority to decide what public interest means in a particular case," the Commission must assess competing policies and consider appropriate factors to make its public-interest determination when one is required.  *See Public Util. Comm'n v. Texas Tel. Ass'n*, 163 S.W.3d 204, 213 (Tex. App.—Austin 2005, no pet.).

24

expense recovery.[16] *See Madden v. Texas Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622, 626 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (holding that agency violated party's procedural due-process rights by failing to notify him of new statutory interpretation applied by agency for first time during party's hearing). We have held that parties may be deprived of procedural due process when an agency adopts new policy in the course of a contested-case hearing without giving the parties pre-hearing notice. *See, e.g., Flores*, 74 S.W.3d at 545; *see also Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004) ("Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). A party is entitled to notice, before the hearing, of the legal norms or standard that will be applied to the facts upon which an agency contemplates taking action. *See Texas State Bd. of Pharmacy v. Seely*, 764 S.W.2d 806, 814 (Tex. App.—Austin 1988, writ denied). To achieve the meaningful hearing

---

[16] During the contested-case hearing, the Commission's staff presented a different argument for disallowing the expenses than the ground relied on by the Commission in its final order. The Commission's staff argued that Commission precedent barred Oncor from recovering expenses incurred in matters that occurred before the system-wide rate case because the Commission would have to reopen Docket No. 34040 to consider the expenses. Moreover, the Commission's staff contended that Oncor had the burden to ask for resolution of the expenses requested in Docket No. 34040 as part of the merger-case settlement. The ALJ concluded that this case differed from the one cited by the Commission as precedent because in Docket No. 34040, which was dismissed without prejudice, there had been no final determination of any issue, including the expense issue. Consequently, the ALJ considered the expenses in this case without reopening Docket No. 34040. *See Public Util. Comm'n v. Southwestern Bell Tel. Co.*, 960 S.W.2d 116, 120 (Tex. App.—Austin 1997, no pet.) (holding that Commission could consider fee-payment issue from prior case without reopening docket because issue had never been adjudicated in prior case). In addition, the ALJ noted that all other capital expenditures were included along with the rate-case expenses from Docket No. 34040 as expenditures for review in the system-wide rate case. Although the parties did not specifically preserve the rate-case expenses requested in Docket No. 34040 for review in a later rate case, the ALJ explained that "[i]t is not uncommon to postpone recovery of expenses until a later docket."

that due process requires, the parties must be able to present evidence on the issues to be decided. *See Flores*, 74 S.W.3d at 545; *Seely*, 764 S.W.2d at 815; *Madden*, 663 S.W.2d at 626-27.

If Oncor had known the Commission was contemplating a new prior-authorization requirement to preserve the ability to seek recovery of rate-case expenses in a later proceeding, it might have presented evidence related to the Commission's finding that later recovery without prior authorization is not in the public interest. The Commission's post-hearing decision prevented Oncor from doing so and, as a result, was arbitrary and capricious. *See Flores*, 74 S.W.3d at 545. The Commission's application of its new requirement is particularly arbitrary here because it determined that Oncor had not preserved its statutory right to seek expenses based on a prior-authorization requirement imposed years after Oncor could have sought the authorization. We hold that the Commission acted arbitrarily and capriciously by (1) failing to adequately explain the reasoning for its change in position on the prior-authorization requirement, (2) making findings of fact and conclusions of law without adequate support in the record, and (3) failing to give notice before the hearing of its intention not to follow previous decisions and to implement a new requirement that would have required Oncor to take action years before the hearing.[17]

---

[17] Oncor also urges that the Commission's new requirement (which it describes as a "newfound rule") is especially arbitrary and capricious for a number of public-policy reasons all related to issues that Oncor foresees with the Commission's application of the requirement in future municipal rate cases or rate cases that are voluntarily withdrawn by the Commission's staff. Our review of the Commission's order for arbitrariness and capriciousness focuses on Oncor's right to know what is expected of it in the administrative process and on the Commission's application of its new requirement to Oncor, not on whether the Commission's new prior-authorization requirement represents sound public policy. Thus, we will not address the new requirement's public-policy implications in this opinion. *See* Tex. R. App. P. 47.1 (court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal).

***The Commission applied a new interpretation of its rule about allowable expenses to preclude recovery of rate-case expenses incurred outside the test year***

The Commission stated in its order that it interprets rule 25.231(b) to mean that "past expenses, including rate-case expenses, that occurred outside the test year" are not recoverable. *See* 16 Tex. Admin. Code § 25.231(b) (2013) (Pub. Util. Comm'n of Tex., Cost of Service). Oncor contends that rate-case expenses are not part of the test-year model and are recoverable to the extent that they are reasonable regardless of when they are incurred. The Commission counters that its interpretation of rule 25.231(b) is controlling and that it properly applied the rule to preclude Oncor's recovery of past expenses.

We apply the same traditional principles that we use to construe statutes to administrative rules. *See Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). Our primary objective is to give effect to the Commission's intent, which we do by following the plain language of the rule. *Id.* If the rule is ambiguous, we give some deference to the Commission's interpretation, but only if the interpretation is reasonable and does not contradict the rule's plain language. *See Texas Citizens*, 336 S.W.3d at 625; *Rodriguez*, 997 S.W.2d at 254-55.

Rule 25.231(b) states:

> Allowable expenses. Only those expenses which are reasonable and necessary to provide service to the public shall be included in allowable expenses. In computing an electric utility's allowable expenses, only the electric utility's historical test year expenses as adjusted for known and measurable changes will be considered, except as provided for in any section of these rules dealing with fuel expenses.

27

16 Tex. Admin. Code § 25.231(b). The rule contains two non-exclusive categories: expenses that are allowable and expenses that are not allowed. *Id.* § 25.231(b)(1)-(2). It does not specifically address rate-case expenses in either of those categories. *Id.*

As discussed earlier, PURA section 36.061(b)(2) specifically provides that rate-case expenses may be allowed as an operating expense. Nothing in the plain language of PURA limits the recovery of rate-case expenses to those incurred during a proceeding's test year. *See* Tex. Util. Code § 36.061(b)(2). A test-year limitation on rate-case expenses would conflict with the legislature's purpose of allowing recovery of rate-case expenses since a ratemaking case cannot be fully prepared or conducted until after the test year closes. Although the Commission's rule 25.231(b) incorporates the test-year model, the rule unambiguously states that it addresses those allowable expenses that are "reasonable and necessary to provide service to the public." As this Court has noted when construing GURA provisions concerning the expenses allowed as part of the rate calculation, there is a difference between the expenses that a utility incurs to provide service to the public and rate-case expenses, which a utility incurs during the administrative process of presenting its rate case. *See City of Port Neches v. Railroad Comm'n*, 212 S.W.3d 565, 581 (Tex. App.—Austin 2006, no pet.) (finding that not every fee incurred by utility to present its cost-of-service argument is automatically recoverable as a rate-case expense). We conclude that rate-case expenses are governed only by PURA section 36.061(b)(2), not by rule 25.231(b).

The Commission asserts that its interpretation in Oncor's case does not misconstrue PURA section 36.061(b)(2). The Commission contends that section 36.061(b)(2) gives it broad regulatory power, including "the discretion to disallow improper expenses," quoting *Suburban Utility*,

28

652 S.W.2d at 362. But the issue here is not whether these expenses are improper—the parties have stipulated that they are reasonable and necessary. As we have already discussed, the supreme court determined in *Suburban Utility* that regulatory agencies should allow recovery of any expense shown to be actual, necessary, and reasonable to avoid conflict with PURA's mandate to allow utilities to recover their operating expenses and a reasonable return. *Id.* at 362-63. Moreover, the supreme court has long acknowledged that the Commission has discretion to consider expenses outside the test year "when necessary to achieve just and reasonable rates." *City of El Paso*, 883 S.W.2d at 188. In addition, the Commission itself has previously stated that "just and reasonable rate case litigation expenses incurred outside of the test year have traditionally been allowed pursuant to PURA § 36.061(b)(2)."[18] Accordingly, we find that the Commission's interpretation of its rule 25.231(b) conflicts with the unambiguous language of the rule and its own prior interpretation of PURA section 36.061(b)(2).[19]

---

[18] Tex. Pub. Util. Comm'n, *Application of Central Power and Light Company for Approval of Unbundled Cost of Service Rate Pursuant to PURA § 39.201 and Public Utility Commission Substantive Rule § 25.344*, Docket No. 22352 at 21 (Oct. 5, 2001) (order) (allowing rate-case expenses incurred before test year and citing, *e.g.,* Tex. Pub. Util. Comm'n, *Application of Texas-New Mexico Power Company for Authority to Change Rates and Petition of Texas-New Mexico Power Company for Approval of Deferred Accounting Treatment for TNP One-Unit Two*, Docket Nos. 10200 and 10034, 19 Tex. P.U.C. Bull. 89, 269 (Mar. 18, 1993) (examiners' report)).

[19] We note that the contours of the interpretation adopted by the Commission are not entirely clear from its order. Although the Commission states that expenses incurred outside the test year are not recoverable under the rule, later in the same order it states that a party may seek expenses outside the test year and from a prior proceeding in a later proceeding as long as the Commission authorizes later consideration of the expenses. The Commission never explains how to reconcile its interpretation that rule 25.231(b) precludes recovery of outside-test-year expenses with the idea that it can provide authorization to seek prior rate-case expenses in a later proceeding. On appeal, the Commission acknowledges that expenses for a current rate case will often be incurred outside the test year, and it clarifies that prior authorization is not required to seek those expenses in the current proceeding. Thus, to restate the Commission's current position, expenses incurred outside the test year are not recoverable—except when the Commission gives permission to seek expenses from a

The Commission did not acknowledge or explain its departure from its traditional interpretation in the Oncor order. The ALJ noted in the proposal for decision for this case that "[i]t is not uncommon to postpone recovery of expenses until a later docket," which necessarily means that the earlier case's expenses would often be incurred outside the test year for the later proceeding. Our review of a number of Commission dockets confirms the truth of the ALJ's statement.[20] In addition, we note that the Commission has not provided a single example of another case in which

---

prior proceeding in a later proceeding, or when the expenses are incurred for the current proceeding, in which case no prior authorization is required to seek outside-test-year expenses. We need not determine whether the Commission's interpretation is reasonable, however, because we find that the rule unambiguously applies only to expenses necessary to provide service to the public, not to rate-case expenses.

[20] *See supra* notes 12 and 13. Oncor relies on Docket No. 34301 as an example of a similar proceeding involving rate-case expenses that were severed out of a system-wide proceeding. Docket No. 34301 was severed from Docket No. 33309. The test year for Docket No. 33309 was the 12-month period ending June 30, 2006. *See Application of AEP Texas Central Company for Authority to Change Rates*, Docket No. 33309 at 4 (March 4, 2008) (order on rehearing). As discussed in notes 12 and 13, AEP requested in Docket No. 33309 expenses from earlier proceedings, including Docket No. 32758. Docket No. 32758 also included a request for rate-case expenses from earlier proceedings, and in some of those cases the Commission had not addressed rate-case expenses or authorized their recovery in a later case. *See supra* note 13. In three of those earlier cases, the Commission issued the orders lacking authorization to collect rate-case expenses in a later case before the test year for Docket No. 33309 began on July 1, 2005, meaning that the rate-case expenses incurred in the earlier cases were necessarily incurred outside the test year for Docket No. 33309. *See* Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company for Good Cause Exception to True-Up Filing Schedule*, Docket No. 30762 (May 27, 2005) (order); Tex. Pub. Util. Comm'n, *Joint Application of AEP Texas Central Company and Texas Genco for Transfer of Responsibility for Administration of Nuclear Decommissioning Trust Funds*, Docket No. 30749 (May 11, 2005) (order); Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company for Approval of Environmental Cleanup Costs Plan*, Docket No. 27207 (Sept. 26, 2003) (order). The Commission nevertheless allowed AEP to recover the earlier outside-test-year expenses. We further note that of those cases in which the Commission authorized a party to seek expenses in a later proceeding, we have not found any case in which the Commission describes its authorization as authorization to seek expenses incurred outside the test year.

it has denied the recoverability of rate-case expenses on the ground that the expenses were incurred before or after the test year. Furthermore, the Commission failed to offer any evidence at the hearing to support its fact finding that recovery of rate-case expenses incurred outside the test year is "not in the public interest." Consequently, we find that the Commission acted arbitrarily and capriciously by changing its position on the recovery of expenses incurred outside the test year without providing any explanation for its change in its prior practice and by denying Oncor's expenses on the basis of its new position.

In sum, the Commission's interpretation of its rule contradicts the plain language of the rule, and it acted arbitrarily and capriciously by adopting a new position on outside-test-year expenses without notice to Oncor or adequate support in the record. We sustain Oncor's first issue because we hold that the Commission acted arbitrarily and capriciously by precluding Oncor's recovery of reasonable and necessary rate-case expenses on the basis of the Commission's new prior-authorization requirement for preserving expenses incurred outside the test year and in an earlier proceeding.

## CONCLUSION

Having sustained Oncor's two issues, we reverse the trial court's judgment affirming the Commission's order, reverse the Commission's order, and remand the cause to the Commission for further proceedings consistent with this opinion.

31

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Reversed and Remanded

Filed:   June 14, 2013