ACCEPTED
03-14-00706-CV
4425431
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/9/2015 3:33:37 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00706-CV

IN THE
TEXAS COURT OF APPEALS
THIRD COURT OF APPEALS DISTRICT
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/9/2015 3:33:37 PM
JEFFREY D. KYLE
Clerk

ENTERGY TEXAS, INC.,

APPELLANT,

V.

PUBLIC UTILITY COMMISSION OF TEXAS,

APPELLEE

ON APPEAL FROM THE FINAL JUDGMENT
IN CAUSE NO. D-1-GN-13-002623
345TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS,
HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

APPELLEE BRIEF OF THE
OFFICE OF PUBLIC UTILITY COUNSEL

OFFICE OF PUBLIC UTILITY COUNSEL
Tonya Baer
Public Counsel
State Bar No. 24026771

Ross Henderson
Assistant Public Counsel
State Bar No. 24046055
ross.henderson@opuc.texas.gov
P.O. Box 12397, Capitol Station
Austin, Texas 78711-2397
(512) 936-7500 (Telephone)
(512) 936-7525 (Facsimile)

March 9, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................... iii

GLOSSARY OF ABBREVIATIONS AND TECHNICAL TERMS ...................... vi

ISSUES PRESENTED ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

SUMMARY OF THE ARGUMENTS ...................................................................... 4

ARGUMENT AND AUTHORITIES ........................................................................ 6

I.     There is substantial evidence in the record to support the Commission's decision to reject ETI's rate case expenses related to Appellant's advocacy for financially-based employee incentive compensation.. ............... 7

     A.  Substantial evidence standard of review. ................................................... 8

     B.  There is substantial evidence to support the Commission's determination that ETI's advocacy regarding financial-based incentive compensation was "unreasonable" and "overly aggressive.". ............................................................................................. 10

     C.  The Commission's decision to disallow a portion of ETI's rate-case expense is also supported by the totality of the record.. .......................... 14

II.    The Commission acted well within its broad discretion when it disallowed ETI's rate case expenses related to Appellant's advocacy for financially-based employee incentive compensation. The Commission did not act arbitrarily or capriciously nor abuse its discretion. ........................... 18

A. The Commission was not bound by any policy to allow rate case expenses for efforts to recover impermissible financially-based incentive compensation. ...............................................................19

B. ETI was afforded due process. ...............................................21

C. The Commission's decision was a case-by-case determination and was not impermissible adjudicative rulemaking.......................................24

III. The Commission's method of quantifying the amount of disallowed rate case expenses is supported by substantial evidence in the record and was not arbitrary, capricious, or an abuse of its discretion. ..................................29

A. The Commission's quantification of the unreasonable rate case expenses is supported by substantial evidence in the record..................30

B. The Commission's quantification of the unreasonable rate case expenses was not arbitrary, capricious, or an abuse of its discretion.....33

PRAYER FOR RELIEF....................................................................35

CERTIFICATE OF SERVICE ...........................................................37

CERTIFICATE OF COMPLIANCE ...................................................38

APPENDIX A
*Application of Entergy Texas, Inc.*, Docket No. 39896, Direct Testimony of Kevin G. Gardner (ETI Application at Bates p. 3155 to 3159) (Nov. 1, 2012) (Interchange item No. 142)

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Burke v. Central Educ. Agency*
    725 S.W.2d 393 (Tex. App. – Austin 1987, writ ref'd n.r.e.)................ 16-17, 19

*Cities of Corpus Christi v. Public Utility Commission*
    188 S.W.3d 681 (Tex. App. – Austin 2005, pet. denied) ..................................35

*City of Amarillo v. Railroad Commission*
    894 S.W.2d 491 (Tex. App. – Austin 1995, writ denied)................ 14-15, 18, 32

*City of El Paso v. Public Utility Commission*
    609 S.W.2d 574 (Tex. App. – Austin 1980, writ ref'd n.r.e.)............................16

*City of Port Neches v. Railroad Commission*
    212 S.W.3d 565 (Tex. App. – Austin 2006, no pet.)....... 6, 13, 14, 15-16, 32, 34

*Industrial Utilities Service v. Tex. Natural Resource Conservation Commission*
    947 S.W.2d 712 (Tex. App. – Austin 1997, writ denied)...................................18

*McHaney v. Tex. Comm'n on Environmental Quality*
    No. 03-13-00280, 2015 WL 869197 *8 (Tex. App. – Austin mem. op.). .........28

*Oncor Electric Delivery Company, LLC v. Public Utility Commission*
    406 S.W.3d 253 (Tex. App. – Austin 2013, no pet.)..........................21-23, 33, 34

*Pedernales Electric Cooperative, Inc. v. Public Utility Commission*
    809 S.W.2d 332 (Tex. App. – Austin 1991, no pet.). .........................................18

*Pioneer Natural Resources USA, Inc. v. Public Utility Commission*
    303 S.W.3d 363 (Tex. App. – Austin 2009, no pet.) ............. 9, 13, 15, 32, 34-35

*Reliant Energy, Inc. v. Public Utility Commission*
    153 S.W.3d 174 (Tex. App. – Austin 2004, pet. denied). ...........................20, 33

*Richards v. Comm'n for Lawyer Discipline*
　　35 S.W.3d 243 (Tex. App. Houston 2000). .......................................................19

*State of Texas' Agencies and Institutions of Higher Learning v.*
　　*Public Util. Comm'n of Tex.*, No. 03-11-00072-CV, 2014 WL 6893871
　　(Tex. App. – Austin Dec. 4, 2014, no pet.).....................................................12

*Texas Dep't of Transp. v. Sunset Transp., Inc.*
　　357 S.W.3d 691 (Tex. App. – Austin 2011, no pet.) .................................. 26-27

*Texas State Board of Pharmacy v. Witcher*
　　447 S.W.3d 520 (Tex.App. – Austin 2014, pet. filed)............................ 25, 26, 27

*Trinity Settlement Services, LLC v. Texas State Securities Board*
　　417 S.W. 3d 494 (Tex.App. – Austin 2013, pet. denied) ...................26, 27, 29, 34


## STATUTES

*Administrative Procedure Act* (APA), TEX. GOV'T CODE §§ 2001.001-.902
(Vernon 2008 & Supp. 2013).................................................................................26

TEX. GOV'T CODE § 2001.003(6) ................................................................. 26-27, 34

TEX. GOV'T CODE § 2001.174(2) .........................................................................35

TEX. GOV'T CODE § 2001.174(2)(e)........................................................................9

*Public Utility Regulatory Act* (PURA), TEX. UTIL. CODE §§ 11.001-66.017
(Vernon 2007 & Supp. 2013)................................................................. 4, 19, 25, 32

TEX. UTIL. CODE § 36.003..............................................................................4, 27, 29

TEX. UTIL. CODE § 36.006.................................................................................5, 33

TEX. UTIL. CODE § 36.051..............................................................................4, 27, 29

TEX. UTIL. CODE § 36.061.................................................................................6, 14

TEX. UTIL. CODE § 36.061(b) ...............................................................8

TEX. UTIL. CODE § 36.061(b)(2) ...............................................4, 25, 30

# GLOSSARY OF ABBREVIATIONS AND TECHNICAL TERMS

**APA –** *Administrative Procedure Act*, Tex. Gov't Code §§ 2001.001-.902 (Vernon 2008 & Supp. 2013)

**AR** – Administrative Record

**Commission** – Public Utility Commission of Texas, Defendant in this appeal

**Docket No. 39896 –** *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment.* The Public Utility Commission of Texas rate case proceeding in which the rate case expenses at issue were incurred.

**Docket No. 40295** – *Application of Entergy Texas, Inc. for Rate Case Expenses Pertaining to PUC Docket No. 39896.* The Public Utility Commission of Texas proceeding from which this appeal is taken.

**OPUC** – Office of Public Utility Counsel, an Intervenor in this appeal

**Order** – The final and appealable order of the Commission in Docket No. 40295, signed on May 21, 2013, from which OPUC appeals in this suit for judicial review.

**Appellant** – Entergy Texas, Inc. (ETI), an electric utility.

**PFD –** Proposal for Decision

**PURA** – *Public Utility Regulatory Act*, Tex. Util. Code Ann. §§ 11.001-66.017 (Vernon 2007 & Supp. 2013)

## BRIEF OF APPELLEE, OFFICE OF PUBLIC UTILITY COUNSEL

TO THE HONORABLE COURT OF APPEALS:

The Office of Public Utility Counsel (OPUC), Appellee, submits this brief in support of the final judgment of the District Court on judicial review of the Final Order on Rehearing of the Public Utility Commission of Texas (Commission or PUC) in Docket No. 42059. Appellee, OPUC respectfully presents the following:

## ISSUES PRESENTED

1.  In Commission Docket No. 39896, Appellant failed to prove that certain financially-based employee incentive compensation expenses were just and reasonable. The Commission had rejected those, or similar, expenses in previous dockets. In Docket No. 40295, the rate case expense hearing that is the subject of this appeal, the Commission denied the rate case expenses Appellant incurred while attempting to include the financially-based employee incentive compensation expenses in its rates in Docket No. 39896. Was the Commission's case-by-case determination within the Commission's broad authority and discretion to grant or disallow rate case expenses?

2.  Was the Commission's case-by-case determination, after notice and hearing, to reject rate case expenses associated with Appellant's request for financially-based employee incentive compensation expenses in the related rate case a

1

violation of Appellant's due process rights or an improper ad hoc rulemaking – or was it within the Commission's broad authority and discretion?

3. Assuming the Commission's decision to reject the rate case expenses related to the financially-based employee incentive compensation expenses was supported by the record and a reasonable exercise of its discretion, was the Commission's *method of quantifying* those rate case expenses, after notice and hearing, within the Commission's broad authority and discretion and supported by substantial evidence in the record?

## STATEMENT OF FACTS

Appellant Entergy Texas, Inc. (ETI) appeals the District Court's Judgment which affirmed the Commission's Final Order in Docket No. 40295.[1] This docket (Docket No. 40295) was a rate case expense hearing that was severed from a previous rate application (Docket No. 39896). In Docket No. 39896, ETI filed an application seeking a $111.8 million increase in base rates.[2] Docket No. 39896 was ETI's third rate case application in only four years.[3] ETI subsequently reduced its requested increase to $104.8 million.[4]

---

[1] Appellant ETI's Initial Brief.
[2] AR Volume I, Binder 2, Item 55 (Final Order at 4, FOF No. 2).
[3] AR Volume I, Binder 2, Item 32 (PFD at 23).
[4] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 10).

2

In its final order for Docket No. 39896, the Commission substantially reduced ETI's overall increase to $27.7 million – a fraction of the original $111.8 million increase requested.[5] Approximately $6.5 million of the $84.1 million reduction from the original request in Docket No. 39896 was for financially-based employee incentive compensation expenses.[6] ETI had previously failed to obtain such expenses in the two immediately preceding rate cases involving the Company (Docket Nos. 34800 and 37744) and failed to do in Docket No. 39896 as well.[7]

During the underlying rate case, SOAH granted ETI's unopposed motion to sever rate case expenses and the PUC docketed the severed proceeding as Docket No. 40295. In Docket No. 40295, which is the subject of this appeal, ETI sought recovery of $8,752,576 in rate case expenses related to Docket No. 39896.[8] Of that total, $7.6 million was incurred by ETI with the remainder being incurred by the intervening Cities.[9]

The Administrative Law Judge (ALJ) held that, based upon the general concerns raised by PUC Commission Staff and Intervenors, "a substantial cut to ETI's rate case expenses is warranted."[10] In the Final Order, the Commission agreed with the ALJ,

---

[5] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 12).
[6] AR Volume I, Binder 2, Item 32 (PFD at 29, third bullet point).
[7] AR Volume I, Binder 2, Item 32 (PFD at 23).
[8] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 13).
[9] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 14).
[10] AR Volume I, Binder 2, Item 32 (PFD at 30).

adopting the relevant portions of the Proposal for Decision (PFD) and finding that "the amount of rate case expenses sought by ETI ($8.8 million) is high, both in absolute terms and in relation to the rate increase ultimately obtained by ETI in Docket 39896 ($27.7 million).[11]

The Commission reduced the amount of recoverable rate case expenses to $6,896,037.73.[12] Of the reduced amount of rate case expenses, the Commission determined that $522,244.66 should be disallowed because this amount of expense was "attributable to unreasonable and overly aggressive arguments" pursued by ETI in Docket No. 39896 related to the financially-based incentive compensation.[13]

## SUMMARY OF THE ARGUMENTS

Under the *Public Utility Regulatory Act* (PURA),[14] the Commission has broad powers and discretion in regulating and setting the rates of public utilities, and in particular, in determining what reasonable costs of participating in a proceeding a utility may be allowed to recover as a cost or expense.[15] The Commission found in the underlying ETI rate case[16] that ETI failed to meet its burden to prove that certain financially-based employee incentive compensation expenses were just and reasonable.

---

[11] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 17).
[12] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 18).
[13] AR Volume I, Binder 2, Item 55 (Final Order at 6, FOF No. 18.f).
[14] *Public Utility Regulatory Act* (PURA), TEX. UTIL. CODE ANN. §§ 11.001-66.017 (Vernon 2007 & Supp. 2013).
[15] PURA §§ 36.003, 36.051 and 36.061(b)(2).

4

In this appeal from the rate case expense hearing, Appellant maintains that the Commission acted outside of its broad authority when the Commission decided to reject rate case expenses associated with Appellant's fruitless efforts to obtain approval for the financially-based incentive compensation expenses in Docket No. 39896. Appellant also argues that the Commission should be required to conduct a rulemaking prior to rejecting such rate case expenses. Additionally, Appellant similarly argues that the Commission's *method of determining* the amount of the rate case expenses attributable to the Company's financially-based incentive compensation request is in error. However, Appellant fails to provide support under the law for its positions and the District Court's Judgment affirming the Commission's Order should be affirmed.

Appellant, as the public utility, had the burden to provide evidentiary support for the rate case expenses rejected by the Commission and under PURA § 36.006 retained the burden of persuasion on the entire case. Appellant had notice and an opportunity to provide evidence and argument with respect to each of those expenses. Appellant further had the opportunity to provide rebuttal evidence and argument in response to the direct cases of the intervening parties and Commission Staff, including the Direct Testimony and Workpapers of Nathan A. Benedict.[17] The Commission considered the ALJ's PFD, weighed the evidence in the record, and considered the parties' arguments.

---

[16] PUC Docket No. 39896, AR Volume I, Binder 2, Item 55 (Final Order).
[17] AR Volume II, Binder 3, OPUC 1, Direct Testimony and Workpapers of Nathan A. Benedict.

5

Ultimately, the Commission adopted the PFD with some changes. The Commission's decisions were a reasonable exercise of its statutory authority and are supported by substantial evidence. The Commission did not act in an arbitrary and capricious manner and the Commission did not abuse its discretion. Further, an agency is not required to adopt a rulemaking prior to exercising its discretionary authority under these circumstances. The Commission has the authority to decide cases through the contested case process. The Court should decline Appellant's request to substitute its own judgment for that of the Commission.

## ARGUMENT AND AUTHORITIES

The Commission has broad discretion to determine recovery of expenses in a ratemaking proceeding. *City of Port Neches v. Railroad Commission*, 212 S.W.3d 565, 579 (Tex. App. – Austin 2006, no pet.). PURA § 36.061 reflects this authority and states that the regulatory authority (here, the Commission) "may allow" as a cost or expense the "reasonable costs of participating in a proceeding under this title not to exceed the amount approved by the regulatory authority."

In the rate case expense proceeding which is the subject of this appeal, Docket No. 40295, the Commission disallowed Appellant's rate case expenses associated with financially-based employee compensation expenses in the associated rate case. Appellant's request to include the financially-based employee incentive compensation

6

expenses ran contrary to longstanding Commission precedent. In seeming contrast to Appellant's arguments, the issue presented in this appeal is not the Commission's rejection of the financially-based employee incentive compensation expenses in the underlying rate case, but instead, the Commission's decision to reject ETI's rate case expense associated with pursuing the financially-based incentive compensation expense request. Appellant argues in its brief that the Commission's Order was arbitrary and capricious and was an abuse of the Commission's broad discretion. Appellant's argument is without merit. The Commission's Order is supported by the record and was a proper exercise of its broad grant of authority under PURA and should be affirmed.

I.    **There is substantial evidence in the record to support the Commission's decision to reject ETI's rate case expenses related to Appellant's advocacy for financially-based employee incentive compensation.**

No party to this proceeding argues that the Commission's decision to deny the financially-based employee incentive compensation in the underlying rate case (Docket No. 39896) was unreasonable. Instead, Appellant disputes the Commission's determination that it was "unreasonable" and "overly aggressive" for ETI to expend the litigation costs associated with seeking the incentive compensation expense. Appellant contends this, despite the fact that the Commission has repeatedly rejected the same financially-based incentive compensation expenses in prior dockets. Appellant cites to

past Commission orders in an attempt to persuade the Court that the Commission's policy on such expenses was unclear or evolving. However, Appellant's argument is incorrect. While it is certainly a fact question for the Commission to decide whether certain incentive compensation may be disallowed if it is tied to financial-based incentives (versus allowable if it is tied to operational performance), the record demonstrates that the rejection of this type of financially-based incentive compensation was settled Commission precedent.

More importantly, Appellant's argument ignores the larger context by which the Commission made its determination. The totality of the record demonstrates that the Commission's decision to disallow the specific rate case expenses in question was simply the means by which the Commission accomplished its ultimate objective of trimming ETI's excessive overall rate case expense. In sum, there is substantial evidence in the record to support the Commission's partial disallowance of ETI's rate case expenses.

## A. Substantial evidence standard of review

In this case, the Commission acted pursuant to a statutory grant of authority. The relevant statute states that the Commission "*may* allow as a cost or expense . . . reasonable costs of participating in a [rate case] not to exceed the amount approved by the regulatory authority." PURA § 36.061(b) (emphasis added). In interpreting this

section, the Third Court has found that the Commission has a broad grant of discretion to determine the recovery of expenses in utility rates – including the reasonable costs of participating in the rate-making proceeding (i.e., rate case expenses). *Pioneer Natural Resources USA, Inc. v. Public Utility Commission,* 303 S.W.3d 363, 376 (Tex. App. – Austin 2009, no pet.).

With regard to the substantial evidence review standard in rate making, the Third Court has said, "we are prohibited from substituting our judgment for the Commission's . . .." *Pioneer*, 303 S.W.3d at 367. The Commission is the sole judge of the weight of the evidence on questions committed to agency discretion. *Id.* The Court described its role as determining whether there is some reasonable basis in the record to support the agency decision even "if the evidence actually preponderates against the Commission's finding . . . as long as there is enough evidence to suggest that the Commission's determination was within the bounds of reasonableness." *Id.*

The substantial evidence standard of review requires the court to reverse the Commission if the substantial rights of the appellant have been prejudiced because the Commission's "administrative findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." TEX. GOV'T CODE § 2001.174(2)(e). Appellant fails to meet this standard of review and the Commission's Order should be affirmed.

**B. There is substantial evidence to support the Commission's determination that ETI's advocacy regarding financial-based incentive compensation was "unreasonable" and "overly aggressive."**

The evidence in the record supports the Commission's determination that it is not reasonable for the customers to bear the costs of ETI's "unreasonable and overly aggressive arguments."[18] OPUC provided evidence in the form of direct testimony by its expert witness, Nathan A. Benedict, who testified about the propriety of the rate case expense request as well as how to quantify disallowances for issues such as the financially-based incentive compensation request.[19] Further, official notice was taken of the record in the underlying rate case, Docket No. 39896.[20] The record in Docket No. 39896 includes evidence related to the Commission's established precedent and policy with regard to financially-based incentive compensation. Intervening Cities and Commission Staff each presented testimony addressing the issue in Docket No. 39896. When seeking the inclusion of the financially-based incentive compensation expenses in rates, the Appellant's own witnesses admitted in their pre-filed direct testimony that their respective recommendations were contrary to Commission precedent and policy, but they hoped to provide new evidence that financial incentive measures benefit customers. *See* Appendix A.[21]

---

[18] AR Volume I, Binder 2, Item 55 (Final Order at 6, FOF No. 18.f).

[19] AR Volume II, Binder 3, OPUC 1, Direct Testimony and Workpapers of Nathan A. Benedict.

[20] AR Volume III, Binder 3, Vol. A, Hearing on the Merits Transcript, p. 16, l. 14 to 24.

[21] AR Volume I, Binder 2, Item 32 (PFD at 21); *See also* Appendix A, *Application of Entergy Texas,*

In the PFD, the ALJ outlined what contributed to his reasoned determination to disallow the rate case expenses associated with the financially-based incentive compensation expenses. First, the PFD states: "In Docket 39896 [the underlying rate case], all parties, including ETI, agreed that the Commission precedent mandated that financially-based incentive compensation is not recoverable.[22] The PFD also recognized other pertinent considerations, including the fact that the underlying rate case docket was the third consecutive rate case in which Appellant sought, but failed to obtain, authority to charge ratepayers for this type of financially-based incentive costs.[23] The ALJ also recognized that Appellant would have been aware that other utilities have sought recovery of this type of financially-based incentive compensation, and been uniformly denied by the Commission.[24] In the Court below, ETI stated that it "does not disagree that past Commission decisions weigh against including financially-based incentive compensation in rates."[25] Nevertheless, ETI asked the Commission to reconsider its long-standing precedent on this issue and demands that the customers to pay for its fruitless efforts.[26]

Appellant concedes that this Court recently upheld the Commission's

---

*Inc.*, Docket No. 39896, Direct Testimony of Kevin G. Gardner (ETI Application at Bates p. 3155 to 3159) (Nov. 1, 2012) (Interchange item No. 142)

[22] AR Volume I, Binder 2, Item 32 (PFD at 21).

[23] AR Volume I, Binder 2, Item 32 (PFD at 23).

[24] AR Volume I, Binder 2, Item 32 (PFD at 24).

[25] Appellant ETI's Initial Brief at13.

disallowance of "compensation payments that are tied to financial performance measures rather than those tied to strictly operational measures such as reliability and safety." Appellants Brief citing *State of Texas' Agencies and Institutions of Higher Learning v. Public Util. Comm'n of Tex.*, No. 03-11-00072-CV, 2014 WL 6893871 (Tex. App.—Austin Dec. 4, 2014, no pet.). Appellant correctly notes that the question of which expenses are disallowable financial measures versus allowable operational measures is a fact question for the Commission to decide based upon the record. *Id.* However, Appellant attempts to stretch the holding of *State of Texas' Agencies* to argue that it was not unreasonable for ETI to seek the rejected financial-based incentive compensation when such a question turns on facts.[27]

In support of its argument, Appellant paints a picture of a murky question before the Commission regarding the disallowed expense. Appellant argues that the Commission's precedent on the recovery of financially-based incentive compensation is evolving, and that the door was open for Appellant to seek such expenses.[28] Appellant cites orders in which, it argues, applicants have made inroads into recovery of certain financially-based incentive compensation.[29]

However, ETI has not cited to a single case where the Commission granted the

[26] AR Volume I, Binder 2, Item 32 (PFD at 21, 2.a).
[27] Appellant's Brief, p. 16.
[28] Appellant's Brief, p. 14.
[29] Appellant's Brief, p. 14.

particular financial-based incentive compensation ETI was seeking. Appellant cannot change the fact that the Commission's precedent was clear with respect to the financial-based incentive compensation. It was uniformly disallowed. Even Appellant's own witnesses admitted that the precedent was clear-cut with respect to the rejected expense. Appendix A.

The record demonstrates that ETI expended litigation efforts in a failed attempt to overturn long-standing Commission precedent. The Commission was not persuaded to overturn its long-standing precedent and determined that ETI's rate case expenses "attributable to [ETI's] unreasonable and overly aggressive arguments . . .is properly disallowed."[30]

When determining the reasonableness and necessity of rate case expenses, the agency is the sole judge of the weight of the evidence and the credibility of the witnesses. *City of Port Neches*, 212 S.W.3d at 579. The record before the Commission and now the Court demonstrates that there is more than "enough evidence to suggest that the Commission's determination was within the bounds of reasonableness." *Pioneer*, 303 S.W.3d at 367.

However, even if ETI could demonstrate that its litigation efforts were not unreasonable and overly aggressive, the Commission's decision must be examined in the larger context whereby the Commission determined that ETI's overall litigation

expenses were excessive and sought a reasonable means to trim them.

## C. The Commission's decision to disallow a portion of ETI's rate-case expense is also supported by the totality of the record.

Appellant's single-minded reliance on the Commission's determination that ETI made "unreasonable and overly aggressive arguments"[31] is misplaced. The Commission's specific disallowance of rate case expense related to financial-based incentive compensation does not exist in a vacuum. Even if ETI could demonstrate that it was reasonable to advocate for those specific expenses in the underlying rate case, the totality of the record demonstrates that the Commission was still well within its allowed discretion to reduce ETI's overall rate case expenses.

The Commission has broad discretion to determine recovery of expenses in a ratemaking proceeding. *City of Port Neches*, 212 S.W.3d at 579. PURA § 36.061 reflects this authority and states that the regulatory authority (here, the Commission) "*may* allow" as a cost or expense the "reasonable costs of participating in a proceeding under this title not to exceed the amount approved by the regulatory authority."

The Commission may draw inferences and conclusions based on its experience, and to make its own determination of what expenses are reasonable, so long as the Commission includes a reason or explanation in its order. Further, the reasonableness of the Commission's determination is looked at in light of the whole record. *See City*

---

[30] AR Volume I, Binder 2, Item 55 (Final Order at 6, FOF No. 18.f).

14

*of Amarillo v. Railroad Commission*, 894 S.W.2d 491 (Tex. App. – Austin 1995, writ denied).

The Commission's discretion includes the authority to consider the context of the rate proceeding for which the expenses were incurred and the authority to disallow rate case expenses based upon the propriety of bringing the proceeding. *See Pioneer*, 303 S.W.3d at 377 (*"The Commission was entitled to take into consideration the fact that Cap Rock's rates had not been regulated by the Commission for a substantial period of time and, therefore, that Cap Rock had to create much of its rate-filing package from scratch."*).

Further, the Commission's authority is not limited to line-item disallowances or charges related to underlying unreasonable costs. In *City of Amarillo*, the Third Court upheld the Railroad Commission's decision to reduce the uncontested rate case expenses related to one analyst's charges by 20% due to insufficiency of support. *City of Amarillo*, 894 S.W.2d at 496-97. In addition, the Third Court of Appeals in another opinion also confirmed that it is within the agency's discretion to find rate case expenses to be unreasonable even if the underlying cost item in the rate case is found to be reasonable. The court stated in its opinion in *City of Port Neches* that:

> It is true that, in order to include . . . costs as an "expense or cost of service" in TGS's rate calculation, TGS was required to demonstrate that those costs were reasonable and necessary. *But the leap cannot be made*

---

[31] AR Volume I, Binder 2, Item 55 (Final Order at 6, FOF No. 18.f).

*from this fact* to TGS's conclusion that any fee incurred by TGS in presenting its "cost of service" argument is automatically recoverable as a rate case expense. *This is where the Commission's discretion . . . plays an integral role.*

*City of Port Neches*, 212 S.W.3d at 581 (emphasis added).

In this case, Appellant's argument focuses solely on the specific reduction in rate case expense and ignores the larger context by which the Commission made its decision. However, the Commission's decision was not as narrow as Appellant would suggest. The Commission determined from the record that ETI's overall rate-case expenses were too high and sought a reasonable means to reduce them.

In Finding of Fact No. 17 of the Commission's Final Order, the Commission determined that "the amount of rate-case expenses sought by ETI ($8.8 million is high, both in absolute terms, and in relation to the increase ultimately obtained by ETI in Docket 39896 ($27.7 million)."[32] ETI has waived any error with respect to this finding because ETI was required to have presented this point of error to the Commission in its Motion for Rehearing.[33] A motion for rehearing must be specific enough to put an agency on notice of an alleged error and give the agency the opportunity to correct the error or prepare to defend it.[34]

---

[32] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 17).
[33] *City of El Paso v. Public Utility Commission of Texas*, 609 S.W.2d 574, 577-578 (Tex. App.—Austin 1980, writ ref'd n.r.e.) (Appellant could not raise potential problems with a PUC Order, including substantial evidence questions, which it failed to raise in its motion for rehearing).
[34] *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 396-97 (Tex. App.—Austin 1987, writ ref'd

16

This uncontroverted finding of fact, and relevant portions of the PFD, demonstrates that the Commission's decision considered the overall context of ETI's rate case expense request not just the reasonableness of the specific disallowed expense. The record shows that the ALJ considered (in portions of the PFD specifically adopted by the Commission,)[35] the frequency in which ETI had filed for rate cases (three in four years);[36] the size of the increase granted relative to the increase requested (only roughly 25% granted);[37] and the disproportionally large amount of rate case expenses relative to the approved underlying rate increase (roughly one third).[38] After considering these general concerns, the ALJ found that "a substantial cut to ETI's rate case expense is warranted."[39]

Only after reaching this general conclusion did the ALJ evaluate the methods by which a substantial cut could be accomplished.[40]  After considering the methods proffered by the parties, the ALJ's disallowance of the specific expenses related to ETI's aggressive long-shot argument (the "issue-specific" approach)[41] was simply the means by which the reduction was accomplished.  Thus, even if the record did not

n.r.e.) (Appellant must provide "(1) identification of the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests.").

[35] AR Volume I, Binder 2, Item 32 (PFD at 29).
[36] AR Volume I, Binder 2, Item 32 (PFD at 29).
[37] AR Volume I, Binder 2, Item 32 (PFD at 29).
[38] AR Volume I, Binder 2, Item 32 (PFD at 29).
[39] AR Volume I, Binder 2, Item 32 (PFD at 30).
[40] AR Volume I, Binder 2, Item 32 (PFD at 31).

conclusively show that ETI's advocacy for certain expenses was "unreasonable and overly aggressive," the Commission's reduction in rate case expenses was supported by the whole record and the overall context of the record. *City of Amarillo*, 894 S.W.2d at 496-97. *Industrial Utilities Service v. Tex. Natural Resource Conservation Commission*, 947 S.W.2d 712 (Tex. App.—Austin 1997, writ denied). This is because the Commission has the discretion to reject even reasonably accrued rate case expenses if the record supports such a decision. *Id.*

In sum, there is ample support in the record for the Commission's disallowance of a portion of Appellant's rate case expenses.

**II.    The Commission acted well within its broad discretion when it disallowed ETI's rate case expenses related to Appellant's advocacy for financially-based employee incentive compensation. The Commission did not act arbitrarily or capriciously nor abuse its discretion.**

Appellant complains that the Commission imposed a new standard upon it when it rejected the rate case expenses associated with the financially-based incentive compensation expenses, and that its purported dissimilar treatment was arbitrary and an abuse of discretion.

The Third Court has described its review under the 'arbitrary and capricious' standard as being "limited and deferential." *Pedernales Electric Cooperative, Inc. v. Public Utility Commission*, 809 S.W.2d 332, 338 (Tex. App.—Austin 1991, no pet.).

---

[41] AR Volume I, Binder 2, Item 32 (PFD at 29).

As discussed above, PURA confers considerable discretion on the Commission in deciding the reasonable and necessary expenses to be recovered in rates. The Commission's determination in this case to disallow rate case expenses associated with fruitless efforts to recover financially-based incentive compensation is supported by the record.

### A. The Commission was not bound by any policy to allow rate case expenses for efforts to recover impermissible financially-based incentive compensation.

To support its position that the Commission treated ETI disparately, Appellant begins by improperly citing to Commission orders that are not part of the record before the Court.[42] Appellant alleges that the orders show that the Commission has "consistently allowed utilities to recover their expenses associated with their efforts to recover the incentive costs."[43]

Appellant introduces the orders as an Appendix to Appellant's brief and gives no indication that the orders are part of the administrative record.[44] To the extent that the orders are not part of the record, they should not be given any consideration. *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 250-51 (Tex. App. Houston 2000); *Burke v. Central Educ. Agency*, 725 S.W.2d 393 (Tex. App. – Austin 1987, writ ref'd n.r.e.). However, even if it were proper for ETI to cite these

---

[42] Appellant's Brief, P. 17 and (Appellant's Appendix D).
[43] Appellant's Brief, P. 17.

Commission orders here, the orders are irrelevant and do not show the Commission policy that ETI contends.

Each of the orders cited by ETI were issued as the result of either stipulated agreements or the case was not contested at all. The Commission had never specifically addressed the question of whether a utility should recover rate case expenses associated with disallowed financially-based incentive compensation expenses in a fully litigated contested case - until now. The Commission cannot have created binding policy when it never previously addressed this issue. There was no such policy. However, even if the policy or precedent existed as Appellant alleges, the Commission is not bound to follow its past decisions so long as the divergence is justified and explained. *Reliant Energy, Inc. v. Public Utility Commission,* 153 S.W.3d 174, 200 (Tex. App.—Austin 2004, pet. denied).

Even assuming there was a Commission precedent relating to recovery of rate case expenses accrued seeking financially-based employee incentive compensation; the Commission was not bound to follow that precedent in this case. The Third Court has held that even when the Commission has treated utilities dissimilarly, the Commission's decision was not arbitrary and capricious where substantial evidence supported the decision and the record did not show that divergence was unjustified. *Reliant*, 153 S.W.3d at 200. Appellant's own brief cites this proposition: "the

---

[44] Appellant's Brief, P. 17 and (Appellant's Appendix D).

Commission is not absolutely bound by its previous decisions and may change its policy on a given issue when relevant circumstances change."[45]

As demonstrated in the substantial evidence review above (Section I), the Commission's use of its broad discretion to reject some of Appellant's rate case expenses was fact specific and supported by substantial evidence in the record. Further, divergence from past practice (if there was any) was not unjustified due to the totality of the record before the Commission. In complete contradiction to the principal that the Commission is not bound by precedent in a case-by-case determination, Appellant argues that the Commission may only exercise its discretion on a prospective basis. Appellant's implausible theory would impermissibly bind the Commission's hands from exercising its statutory grant of authority each time the Commission made a determination.

## B. ETI was afforded due process.

Appellant cites the Third Court's *Oncor Electric Delivery Company LLC v. Public Utility Commission* opinion for the proposition that parties "are entitled to know what agency standards will be applied to them in advance of the administrative process." *Appellant's Brief* at 19; Citing *Oncor Electric Delivery Company LLC v. Public Utility Commission*, 406 S.W.3d 253 (Tex. App.—Austin 2013, no pet.). Appellant asserts that the Commission was required to develop new policies regarding the collection of

---

[45] Appellant's Brief at 16.

rate case expenses prospectively only, and within the context of a rulemaking.[46] In actuality, it is Appellant that is attempting to foist a new standard of discretion on the agency. The Commission made a case-by-case determination based upon the record before it. The Commission's decision was well within the bounds of its broad discretion to award rate case expenses.

In *Oncor*, the Third Court held the Commission failed to provide any support in the record for a conclusion of law. The court also held that the Commission's decision to require a new procedure after the fact (a new procedure that the Applicant was now foreclosed from availing itself of) was a violation of due process and fundamental fairness. *Oncor*, 406 S.W.3d 253. Appellant argues that Docket No. 40295 was identical to the scenario presented in *Oncor*. Appellant states that the Commission's decision in this case was similar because the "post-hearing imposition of a new policy was fundamentally unfair because by that time, it was too late for Oncor to comply with the new rule"[47] Appellant is incorrect, the *Oncor* decision is not instructive in this case.

The Third Court's ruling in *Oncor* is inapplicable to the current rate appeal for two reasons. First, unlike in *Oncor*, the Commission's decision to deny rate case expenses was fact- specific to this record and thoroughly explained in the PFD and Commission Order. *Oncor*, 406 S.W.3d 253, 268. In *Oncor* "the Commission failed to

---

[46] Appellant's Brief at 19.
[47] Appellant's Brief at 19.

articulate any rational connection between the facts of this case and its decision." As detailed above, the Commission's determination in this case was based upon substantial evidence showing that ETI's rate case expenses were generally too high and that the company took unreasonable positions in the rate case.

Second, the holding in *Oncor* was primarily that the Commission's announcement of a new policy was a departure from past precedent that precluded the utility from receiving notice and opportunity to be heard and, therefore, was a violation of due process. *Oncor*, 406 S.W.3d 253, 268. The Third Court states in *Oncor*, "to achieve the meaningful hearing that due process requires, the parties must be able to present evidence on the issues to be decided." *Oncor*, 406 S.W.3d 253, 269.

Unlike the applicant in *Oncor*, Appellant was afforded notice and an opportunity to be heard. In *Oncor*, the utility was not allowed to present any evidence on its rate case expenses, whereas in this case, ETI had two full hearings to present evidence and meet its burden to prove the reasonableness of including financially-based employee incentive compensation expenses in its cost of service and the reasonableness of expenses related to advocating for them.

In addition, in the underlying rate case (Docket 39896) ETI was aware that all of the other parties opposed its request to recover financially-based incentive compensation. Indeed, as outlined above, even ETI knew it was attempting to overturn

Commission precedent. ETI cannot complain about the disallowance of the rate case expenses associated with a position ETI knew was unlikely to prevail on. Furthermore, it was ETI who filed the unopposed request to sever the rate case expense issue from Docket 39896 in the first place, which prevented the other parties from stating their positions on rate case expenses in the underlying rate case.

In this case, (Docket 40295) the issue of disallowing rate case expense associated with ETI's unreasonable positions in the rate case was raised early in the proceeding. OPUC provided direct testimony on the issue which Appellant then had the opportunity to rebut through rebuttal testimony.[48] Appellant also had multiple opportunities to brief the issue and provide argument before the Commission's decision. The Commission simply used its broad grant of discretion to reject Appellant's request based upon the totality of the record. Appellant's due process rights were satisfied in the proceeding and the Commission's Order should be affirmed.

## C. The Commission's decision was a case-by-case determination and was not impermissible adjudicative rulemaking.

Similarly, Appellant's characterization of the Commission's decision to deny these rate case expenses as being impermissible adjudicative rulemaking also misses the mark. The Commission's decision to deny these rate case expenses was not, as Appellant claims, a broad amendment to the Commission's rules. The Commission had no rule and

---

[48] AR Volume II, Binder 3, OPUC 1, Direct Testimony and Workpapers of Nathan A. Benedict.

created no new rule. The only rule that guided the Commission's decision was its statutory discretion to determine rate case expenses on a case-by-case basis under PURA. TEX. UTIL. CODE § 36.061(b)(2). The Commission's decision was discrete and particular to the totality of the facts of this particular case.

Appellant relies heavily upon the Third Court's opinion in *Texas State Board of Pharmacy v. Witcher* to support its position that the Commission's use of discretion in this case was an impermissible adjudicative rulemaking. *Texas State Board of Pharmacy v. Witcher*, 447 S.W.3d 520 (Tex.App. – Austin 2014, pet. filed). The court in *Witcher* held that the Board of Pharmacy's decision to suspend a pharmacist's license, due solely to a policy annunciated in a previous adjudicative matter and without any consideration for the differences in factual circumstances between the two matters constituted illegal rulemaking. *Id.*

This matter is distinguishable from the *Witcher* decision on the most crucial threshold question: The Commission in Docket No. 40295 did not create a 'rule' when it exercised its statutory discretion to determine rate case expenses on a case-by-case basis under PURA. TEX. UTIL. CODE § 36.061(b)(2). The Commission's decision was discrete and particular to the totality of the facts of this particular record. The Commission did not announce a rule of general applicability for future matters regardless of the factual circumstances. The Commission was simply exercising its statutory discretion to

determine the reasonableness of rate case expenses on a case-by-case basis.

The most distinguishing fact that separates the matter at hand from *Witcher* is that the Appellant in this case was not prejudiced by a previously announced Commission policy or rule. *Trinity Settlement Services, LLC v. Texas State Securities Board*, 417 S.W. 3d 494, 501 (Tex.App. – Austin 2013, pet. denied) (TSSB did not express an intent to apply its decision in all future cases regardless of the factual circumstances). The Commission's exercise of its discretion on a case-by-case basis does not constitute a rule under the Administrative Procedure Act (APA).[49]

> The APA provides a definition for 'Rule':
>
> (A) means a state agency statement of general applicability that:
>   i. implements, interprets, or prescribes law or policy; or
>
>   ii. describes the procedure or practice requirements of a state agency;
>
> (B) includes the amendment or repeal of a prior rule; and
>
> (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

TEX. GOV'T CODE § 2001.003(6). In order to constitute a 'rule' under this definition, "an agency statement interpreting law must bind the agency *or otherwise represent its authoritative position in matters that impact personal rights.*" *Texas Dep't of Transp.*

---

[49] *Administrative Procedure Act* (APA), Tex. Gov't Code §§ 2001.001-.902.

*v. Sunset Transp., Inc.,* 357 S.W.3d 691, 703 (Tex.App.— Austin 2011, no pet.); *See*

*Trinity Settlement Services, LLC v. Texas State Securities Board*, 417 S.W. 3d 494, 501

(Tex.App. – Austin 2013, pet. denied). The court in *Trinity* specifically distinguished

*Witcher* saying, "[i]n order to be considered a statement of 'general applicability' under

the APA, agency pronouncements must 'affect the interest of the public at large such

that they cannot be given the effect of law without public input.'" *Trinity,* 417 S.W.3d

at 502 (no intent for interpretation of suit to apply in all future cases, regardless the

factual circumstances).

Appellant's argument is incorrect because there was no binding policy on the

Commission other than unreasonable and unnecessary expenses shall be disallowed

pursuant to PURA §§ 36.003 and 36.051. The Commission's decision in this matter

does not meet the APA definition of a rule because Appellant failed to show that the

decision was "a statement of general applicability." *Id;* TEX. GOV'T. CODE §

2001.003(6). As has been discussed previously, the Commission based its decision on

the particular set of facts to the record before it.

Appellant's argument rests solely on a statement made by one Commissioner.

Chairman Nelson is quoted by Appellant as saying: "I think just the issue of rate case

expenses, whether it's a utility or the cities, I think it's something we've needed to look

at for a while, and this is the type of issue that would be appropriate to include in that

type of rulemaking."[50] A single statement by one Commissioner in this context does not create or express the Commission's policies nor does it serve as a statement of the Commission's intention in adopting a final order. The fact that the Commission mentioned adopting a rulemaking on the issue, "strongly implies that rulemaking is not occurring at that hearing." *McHaney v. Tex. Comm'n on Environmental Quality*, No. 03-13-00280, 2015 WL 869197 *8 (Tex.App.-Austin mem. op.).

In *McHaney*, the Third Court considered a strikingly similar fact pattern and argument by a waste handling facility (McHaney) that the TCEQ had engaged in improper ad hoc rulemaking. *Id.* There, McHaney argued that the Commission "improperly announce[d] new, clarified record-keeping rules" relating to his record-keeping for universal waste. *Id.* The Third Court held that the Commission's actions were taken pursuant to the Commission's general discretion to assess penalties and that the actions were supported by substantial evidence. In *McHaney*, the TCEQ Commission made a similar comment to what Chairman Nelson made in this matter: "if there is a need for clarity in our rules, I would encourage our staff to look at that and see *if we need to go through the rulemaking* or provide some other guidance." *Id.* Contrary to what *McHaney* argued, and what Appellant argues here, the Third Court stated that the Commissioner's statement about rulemaking "strongly implies that rulemaking is not occurring at that hearing." *Id.*

---

[50] Appellant's Brief at 22.

Appellant has failed the threshold question of whether a rule was created. *Trinity,* 417 S.W.3d at 502. Appellant has not shown any evidence that the Commission expressed or intended its decision in this matter to be generally applicable or binding regardless of the facts. The Commission simply used its discretion pursuant to PURA §§ 36.003 and 36.051to determine that it would be unreasonable for Appellant to recover certain rate case expenses based upon the totality of the record before the Commission. Therefore, the Commission's decision is not shown to be arbitrary and capricious or an abuse of its broad discretion.

### III. The Commission's method of quantifying the amount of disallowed rate case expenses is supported by substantial evidence in the record and was not arbitrary, capricious, or an abuse of its discretion.

Appellant argues that even if the Commission's decision to reject the rate case expense associated with the financially-based incentive compensation is not reversible, then the Commission's *method of quantifying* the amount of rate case expenses to reject was "an unexplained departure from Commission precedent and should be imposed, if at all, prospectively after a rulemaking."[51] Appellant's arguments regarding the method of disallowance are incorrect for virtually the same reasons as the arguments discussed above regarding whether the Commission should make the disallowance at all. The Commission's decision was rationally based upon evidence in

---

[51] Appellant's Brief at 27.

the record, was not arbitrary and capricious, and was well within its broad discretion under TEX. UTIL. CODE § 36.061(b)(2).

### A. The Commission's quantification of the unreasonable rate case expenses is supported by substantial evidence in the record.

There is a rational basis in the evidentiary record to support the Commission's method of quantifying the amount of rate case expenses to reject. As was discussed in detail in Section II above, the Commission decided that some amount of reduction in rate case expenses was warranted due to Appellant's choice to take an unreasonable position in the underlying rate case – a position that ran counter to long-standing Commission precedent. The Commission thoroughly explained how its determination in this matter was particular to the facts of this case and that the totality of the record showed that awarding the financially-based incentive compensation to ETI in this case would be unreasonable. The Commission found that the total amount of rate case expenses sought by ETI was "high, both in absolute terms, and in relation to the rate increases ultimately obtained by ETI in Docket 39896 ($27.7 million)."[52]

Based upon these facts in the record, the Commission had several ways to determine the amount of rate case expenses to reject. The Commission relied on evidence and testimony presented by the parties giving various options as to the

---

[52] AR Volume I, Binder 2, Item 55 (Final Order at 5, FOF No. 17).

amount of rate case expenses to reject due to Appellant's unreasonable overreaching.[53]

In fact, the PFD discusses the merits of three approaches provided by the parties based on the evidence presented. The approaches discussed are: the '50/50 approach' (whereby Appellant receives only 50% of its rate case expenses); the 'results-obtained approach' (whereby Appellant's rate case expenses are reduced in proportion to the ratio of their rate case recovery – in this case ETI would only receive 26.4% of its rate case expenses); and the 'issue-specific approach' (whereby Appellant's rate case expenses are reduced proportionately to the amount of specific overreaching - in this case financially-based incentive compensation).[54]

Each of the above approaches is based upon evidence in the record that was adduced at the hearing. The ALJ ultimately recommended, and the Commission adopted, an issue-specific reduction of rate case expenses based upon the amount of rate case expenses that were clearly overreaching, because they were based on the a position that ran counter to clear Commission precedent.[55] The Commission's decision to adopt the issue-specific approach was a middle-ground position. As the ALJ noted in the PFD "the Commission is not required to grant recovery of every reasonable expense and can take into account other considerations."[56] The Commission could

---

[53] AR Volume I, Binder 2, Item 32 (PFD at 29-30).
[54] AR Volume I, Binder 2, Item 32 (PFD at 29-30).
[55] AR Volume I, Binder 2, Item 55 (Final Order at 2).
[56] AR Volume I, Binder 2, Item 32 (PFD at 30-31).

have taken a more punitive approach and its decision still would have been supported by the record.

As discussed earlier, the Commission's authority with regard to rate case expenses is not limited to line-item disallowances or charges related to underlying unreasonable costs. *See City of Amarillo* 894 S.W.2d at 496-97; *City of Port Neches*, 212 S.W.3d at 579-582. The PFD and the Commission's Order in Docket No. 40295 recognized this.

Appellant argues that the record does not support the Commission's determination because Appellant had put forth unrebutted evidence of actual expenses associated with the issue-specific reduction. The ALJ considered Appellant's evidence and concluded that the expenses put forth by Appellant captured only a fraction of the rate case expenses associated with Appellant's unreasonable position.[57] In other words, the Commission concluded that the Appellant failed to meet its burden to separate reasonable, from unreasonable, rate case expenses.[58] The Court should reject Appellant's suggestion to flip the burden of proof set forth in PURA from the utility to the Commission.[59] The Court should likewise resist Appellant's request for the Court to re-weigh the evidence and substitute its judgment for that of the Commission. *Pioneer*, 303 S.W.3d at 367.

---

[57] AR Volume I, Binder 2, Item 32 (PFD at 24).
[58] AR Volume I, Binder 2, Item 32 (PFD at 24).

Simply put, there is substantial evidence in the record to support the Commission's reasoned decision and its Order should be affirmed.

## B. The Commission's quantification of the unreasonable rate case expenses was not arbitrary, capricious, or an abuse of its discretion.

Appellant contends that the Commission's method of quantification is flawed because "it is an unexplained departure from Commission precedent, and should be imposed, if it all, prospectively in the context of a rulemaking proceeding."[60] This contention is virtually identical to the contention addressed in Section II above and fails for all of the same reasons. OPUC adopts the responses from Section II for the purpose of responding to this argument. Summarized, the reasons discussed above are:

(1)   The Commission's use of its broad discretion to reject certain of Appellant's rate case expenses was fact specific and supported by the record. Further, the record does not show that divergence from past practice (if there was any) was unjustified. *Reliant,* 153 S.W.3d at 200.

(2)   The Third Court's ruling in *Oncor* is inapplicable to the current rate appeal for two reasons. First, the Commission's decision to deny rate case expenses was fact specific to this record and not generally applicable to all utilities. *Reliant,* 153 S.W.3d at 200. Second, Appellant's due process rights were not violated. Unlike the applicant in *Oncor*, Appellant

---

[59] TEX. UTIL. CODE § 36.006.

was afforded notice and an opportunity to be heard. Appellant had two full hearings in which to present evidence and meet its burden to prove the reasonableness of its rate case expenses, and multiple opportunities to brief the issues and provide argument to the Commission. *Oncor*, 406 S.W.3d at 253.

(3)     The threshold question in determining whether adjudicative rulemaking has occurred is whether a rule has been announced. Appellant has failed to show there was a rule. *Trinity*, 417 S.W.3d at 502. There is no evidence in the record that the Commission intended its decision in this matter regarding methodology to have any general applicability to future applicants. In other words, the Commission's decision did not meet the APA definition of a "rule." TEX. GOV'T CODE § 2001.003(6).

In addition to the responses summarized above, OPUC notes the Commission's authority is not tied to any specific methodology or accounting treatment. The Commission has broad discretion to determine recovery of expenses in a ratemaking proceeding. *City of Port Neches*, 212 S.W.3d at 579. Further, the Third Court has specifically upheld the Commission's discretion to make percentage inferences from the evidence in the record as it has done in this matter. *Pioneer*, 303 S.W.3d at 369-370. The Court in *Pioneer* held that in calculating the accounting treatment of a

---

[60] Appellant ETI's Initial Brief at 21.

computer expense, the Commission had discretion to infer a 35% multiplier where the 35% figure was within the range of evidence supported by substantial evidence even when there was no presentation of that particular figure:

> [E]ven when no evidence suggests a specific figure explicitly, the Commission may infer the figure if it is supported by the body of evidence. . . . Moreover, the Commission may 'accept or reject in whole or *in part* the testimony of various witnesses who testify.'

*Pioneer*, 303 S.W.3d at 369, *quoting Cities of Corpus Christi v. Public Utility Commission*, 188 S.W.3d 681, 695 Tex. App.—Austin 2005, pet. denied) (emphasis added by citing court). Indeed, the Commission makes allocations based upon inferences in the record regularly. The Commission's decision in this case is even stronger because there was expert testimony and evidence in the record which supported the exact figure that the Commission chose to adopt.[61]

For the forgoing reasons, the Commission's Order should be affirmed.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Intervenor OPUC prays that pursuant to TEX. GOV'T CODE § 2001.174(2) and other applicable law, the Court will deny Appellant Entergy Texas, Inc.'s Issues Presented, and affirm the Commission's Order. OPUC further prays for any other relief to which it may be justly entitled.

---

[61] AR Volume II, Binder 3, OPUC 1, Direct Testimony and Workpapers of Nathan A. Benedict; and

Respectfully submitted,

Tonya Baer
Public Counsel
State Bar No. 24026771


*/s/ Ross W. Henderson*

Ross W. Henderson
Assistant Public Counsel
State Bar No. 24046055

OFFICE OF PUBLIC UTILITY COUNSEL
1701 N. Congress Avenue, Suite 9-180
P.O. Box 12397
Austin, Texas 78711-2397
512/936-7500 (Telephone)
512/936-7525 (Facsimile)
ross.henderson@opuc.texas.gov

---

AR Volume I, Binder 2, Item 32 (PFD at 29-31).

## Certificate of Service

I certify that Intervenor Appellee, Office of Public Utility Counsel's Brief was electronically filed with the Clerk of the Court using the electronic case filing system of the Court, and that a true and correct copy of this document was served upon counsel for each party of record, listed below, by electronic service and 1st Class U.S. Mail, on this 9th day of March, 2015.

Marnie A. McCormick
John F. Williams
Duggins, Wren, Mann & Romero, LLP
P.O. Box 1149
Austin, Texas  78767-1149
(512) 744-9300
(512) 744-9399 (fax)
mmcormick@dwmrlaw.com
jwilliams@dwmrlaw.com
*Counsel for Entergy Texas, Inc.*

Elizabeth R. B. Sterling
Environmental Protection Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4152
(512) 320-0911 (fax)
elizabeth.sterling@texasattorneygeneral.gov
*Counsel for the Public Utility Commission of Texas*

Katherine H. Farrell
Administrative Law Division – Energy
Rates Section
Office of the Attorney General
P.O. Box 12548 – Mail Code 018-12
Austin, Texas 78711-2548
(512) 475-4237
(512) 936-0674 (fax)
katherine.farrell@texasattorneygeneral.gov
*Counsel for State Agencies*

Rex VanMiddlesworth
Benjamin Hallmark
Thompson & Knight, LLP
98 San Jacinto Blvd, Ste. 1900
Austin, Texas 78701
(512) 469-6100
(512) 469-6180 (fax)
rex.vanm@tklaw.com
benjamin.hallmark@tklaw.com
*Counsel for Texas Industrial Energy Consumers*

*/s/ Ross W. Henderson*
Ross W. Henderson

## Certificate of Compliance

I certify that the Appellee Brief of the Office of Public Utility Counsel contains 7,938 words, as measured by the undersigned counsel's word-processing software, and therefore complies with the word limit found in Tex. R. App. P. 9.4(i)(2)(B).

*/s/ Ross W. Henderson*
Ross W. Henderson

# APPENDIX A

*Application of Entergy Texas, Inc.*, Docket No. 39896, Direct Testimony of Kevin G. Gardner (ETI Application at Bates p. 3155 to 3159) (Nov. 1, 2012) (Interchange item No. 142)

and restricted stock awards to be at market, I conclude that the actual level of stock option and restricted awards for the Test Year is reasonable.

Q. WHAT CONCLUSION DO YOU DRAW FROM THIS ANALYSIS OF THE ENTERGY COMPANIES' COMPENSATION VERSUS THE MARKET?

A. The Entergy Companies establish compensation targets that reflect the market median for individual components and in the aggregate. The design of the compensation program is reasonable and that design yielded a reasonable combination of base pay, annual incentive compensation, and long-term incentive compensation during the Test Year.

6. Commission Precedent Regarding Financially Based Incentive Compensation

Q. ARE YOU AWARE OF COMMISSION PRECEDENT THAT HAS DISALLOWED FINANCIALLY BASED INCENTIVE COMPENSATION?

A. Yes. I have been informed by counsel that what the Commission has termed financially based incentive compensation has been disallowed in several recent rate cases in Texas.

Q. IS A PORTION OF THE INCENTIVE COMPENSATION REQUESTED BY THE COMPANY IN THIS CASE TIED TO ITS PROFITABILITY AND STOCK PRICE?

A. Yes. Based on the methodology used to divide annual incentive pay between financial and operational measures utilized by the utility (and accepted by the Commission Staff) in PUCT Docket Nos. 34800 and 37744, approximately 14.1% of ESI's annual incentive compensation is tied to financial measures such as profitability and stock price. See Exhibit KGG-4. In addition, all of the equity-based long-term incentive compensation programs I describe above are tied to such financial measures. On the other hand, none of the costs of the ML 6 Operational Incentive Plan are tied to financial measures of profitability or stock price.

Q. IN LIGHT OF THE PRECEDENT YOU DESCRIBE ABOVE, WHY IS ETI REQUESTING RECOVERY OF TEST YEAR COMPENSATION COSTS RELATED TO FINANCIALLY BASED MEASURES?

A. First, I am informed by counsel that the Commission precedent disallowing financially based incentives is not required by statute or rule and that the Commission retains the authority to chart a different course. The facts and evidence presented are different in each case, and the Commission should continue to consider whether incentive programs, such as the programs I describe above, deserve to be divided into its subparts and, in part, disallowed. The operational and financial goals of the Entergy

3156

Companies' incentive plans are intertwined such that operational measures help the Entergy Companies achieve financial success and the financial measures help the Entergy Companies achieve operational success.

Incentive compensation based on financial metrics is a reasonable, necessary, and common component of compensation for companies like the Entergy Companies, including ETI. Such incentive compensation is a part of the compensation programs of substantially all of ETI's peer companies. It is a market necessity that ETI include such pay in its compensation package so that it can hire and retain talented employees, and customers benefit from a utility that offers compensation that attracts and keeps qualified people.

Further, Company witness Jay C. Hartzell identifies empirical studies not previously considered by the Commission that connect financially based incentive compensation to benefits for customers. As he testifies, encouraging the financial health of the company is in customers' interests because if a company maintains a financially healthy position, it will tend to have a lower cost of capital that will in turn benefit customers through lower rates, and the financially healthy company will be more prepared for emergency events such as storms. Mr. Hartzell also explains that, with financial health, the costs of doing business with suppliers (of both goods and services, including labor) will remain lower because, for example, if a company was not in a financially stable condition, suppliers

would tend to demand higher prices or more onerous credit terms, resulting in higher costs that would lead to higher rates than would otherwise occur.

Additionally, disallowing financial-based performance targets only serves to encourage utilities to eliminate them, and such an approach weakens the alignment of employees' financial interests with the interest of the ratepayers in having an efficiently run and financially healthy utility. Having only operational targets could encourage utilities to overspend in some areas and would result in an incomplete, unbalanced incentive program that would be atypical when compared with American industry in general and does not create a reasonable mix of incentives.

Further, to the extent that the total compensation levels are within market range, it should be at the reasonable discretion of the Entergy Companies to determine how best to pay their employees, and it is common practice for a company to emphasize one form of compensation over another form depending on its circumstances. It would not be appropriate to conclude that, for example, all of the compensation paid to ETI employees is reasonable, so long as it is all paid in the form of base salary, but that it becomes unreasonable when that same level is partially paid out in the form of incentive pay.

Finally, the Commission should also reconsider its precedent regarding incentive compensation tied to financial performance because increasing company profitability is a legitimate end for public utilities.

3158

Investor-owned utilities are authorized by statute to earn a reasonable return on invested capital, and thus trying to achieve financial targets that support the utility's ability to achieve the authorized return is properly viewed as a legitimate performance goal for a regulated utility. Utilities are allowed and expected to operate at a profit. It is not reasonable to disallow such expenditures as *per se* unreasonable simply because they are tied to company profitability.

### C. Benefit Plans

#### 1. Description of the Entergy Companies' Benefit Plans

Q. PLEASE DESCRIBE THE BENEFIT PLANS PROVIDED BY THE ENTERGY COMPANIES TO THEIR EMPLOYEES.

A. The benefit plans consist of: (1) medical and dental plans; (2) employee disability insurance; (3) employee life insurance as well as accidental death and dismemberment insurance; (4) retirement plans, consisting of both a defined benefit pension plan and a 401(k) Savings Plan; and (5) Executive Retirement Benefit Programs.

The costs of providing many of these programs are shared between the Entergy Companies and their employees. The cost sharing allows the Entergy Companies to provide competitive benefits programs to employees while maintaining total compensation costs that were comparable with industry medians.

3159